**Therese A. FARBER,
Plaintiff–Appellant,**

v.

**MASSILLON BOARD OF EDUCATION,**■
**Defendants–Appellees.**

**Nos. 87–4035, 89–3456.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1990.

Decided Dec. 11, 1990.

Rehearing and Rehearing En Banc
Denied Sept. 28, 1990.

freight, states "F.O.B. Houston" rather than "F.O.B. jobsite."

Leonard F. Lybarger, Cleveland, Ohio, for plaintiff-appellant in Nos. 87–4035 and 89–3456.

Ronald J. James, argued, Carolyn K. Seymour, Ronald J. James, Squire, Sanders & Dempsey, Cleveland, Ohio, James P. Burnes, John E. Britton, Means, Bichimer, Burkholder & Baker, Columbus, Ohio, for defendants-appellees in No. 87–4035.

James P. Burnes, Columbus, Ohio, Carolyn K. Seymour, Ronald J. James, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants-appellees in No. 89–3456.

Before KEITH and KRUPANSKY, Circuit Judges, and TAYLOR, District Judge.**

ANNA DIGGS TAYLOR, District Judge.

The first of these two consolidated appeals is of Appellant's claims that the Massillon Board of Education (and certain individuals not parties here) discriminatorily denied her promotional appointment to two positions on the basis of her age and her sex. The second consolidated appeal concerns attorney fees. For the reasons discussed below, we reverse and remand for further proceedings consistent herewith.

Appellant, who was born in 1930 and holds a Master's Degree in educational administration, taught in several parochial schools, was principal of a parochial school for six years, and holds numerous certificates including those of teacher and provisional elementary principal, as well as numerous commendations for her teaching skills. She began teaching in the Massillon school district in 1972. By 1978 Appellant had a total of 27 years of experience in teaching grades 1–8, the last six of which were in the Massillon system. She also coordinated, directed, and taught in the Massillon Adult Basic Education Program (ABE).

In 1978, Appellant applied for the newly vacant combined position of Principal of

** Honorable Anna Diggs Taylor, U.S. District Judge, Eastern District of Michigan, Southern Division, sitting by designation.

Lincoln Elementary, Director of ABE, and Director of the Title I Remedial Reading Program. Superintendent Louis Young rejected her application in favor of Robert Otte, a male teacher, and Appellant thereafter filed a complaint of sex discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

Superintendent Young resigned because of illness in 1980. Darnell Cheyney, Director of Instruction, was appointed Interim Superintendent and was therefore required to fill the vacancy he had left in the Director's post. Of at least thirty-two candidates for that job, only two were female and one of those was Appellant. She became one of four finalists in the competition, but ultimately lost to a younger male; James Gides.

Appellant filed another complaint with EEOC, alleging sex and age discrimination. In due course, EEOC issued Right–To–Sue Letters, and Appellant filed this action. Her complaint below charged two counts of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; two counts of sex discrimination in violation of 42 U.S.C. § 1983; and one count under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Other claims were included, but subsequently withdrawn.

The trial court dismissed Appellant's two § 1983 claims prior to trial, for having been filed beyond the statute of limitations. It then tried the Age Discrimination Act claim to a jury, which awarded Appellant damages of $76,383.00. After trial, the court remitted the damage award to $38,817.36, on Appellee's motion, and denied Appellant's motion for either front pay or appointment to the position wrongfully denied. Thereafter, it held a bench trial on Appellant's two Title VII claims and rendered judgment on both for defendants. This appeal is from each of those rulings, and the second appeal complains of the amount of attorney fees awarded Appellant for her successful prosecution of the ADEA claim.

*Remittitur*

The district court granted Appellee's post-trial motion to remit the jury verdict for Appellant's ADEA back pay loss, finding the evidence insufficient to support the jury's award. Appellant was given no opportunity, moreover, to opt for a new trial in lieu of the remittitur. She contends that both the remittitur itself, as well as the failure to offer an alternative thereto were erroneous, and we agree.

As a general rule, this court has held that "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Green v. Francis,* 705 F.2d 846, 850 (6th Cir.1983); *Jones v. Wittenberg University,* 534 F.2d 1203, 1212 (6th Cir.1976).

A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the conscience of the court. *Jones v. Wittenberg University, supra; Hines v. Smith,* 270 F. 132 (6th Cir.), *cert. denied,* 255 U.S. 576, 41 S.Ct. 448, 65 L.Ed. 794 (1921). If there is any credible evidence to support a verdict, it should not be set aside. *Wertham Bag Co. v. Agnew,* 202 F.2d 119 (6th Cir.1953). The trial court may not substitute its judgment or credibility determinations for those of the jury. Moreover, it abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses. *Hewitt v. B.F. Goodrich,* 732 F.2d 1554 (11th Cir. 1984); *Cross v. Thompson,* 298 F.2d 186 (6th Cir.1962); *Duncan v. Duncan,* 377 F.2d 49 (6th Cir.1967), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967).

When examined in light of the settled law outlined above, the remittitur in this case will not pass muster. The damages which the jury awarded were the exact amount which Appellant had testified were

the maximum due her. Under such circumstances, they should not be disturbed by the court. *U.S. v. 329.73 Acres,* 666 F.2d 281 (5th Cir.1982). Although evidence was conflicting, the jury apparently chose to give full credit to Appellant's testimony that she could serve both as Director and teacher in the ABE program, and her evidence that she would have been compensated, if appointed Director in 1980, at the tenth and highest level of the salary scale. Although Appellee presented evidence to the contrary on both points, we note that the district court itself stated, during trial, that the level of pay scale which Appellant would have attained was "a jury question," because "there is evidence in the record from which the jury could draw" the conclusion that she would have started at level ten. There was, indeed, sufficient evidence to support the jury's verdict, and remitting it constituted an abuse of discretion, under the circumstances.

Moreover, even if remittitur had been appropriate here, a forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error, requiring this court to reverse and reinstate the verdict. *Brewer v. Uniroyal, Inc.,* 498 F.2d 973 (6th Cir.1974); *Staplin v. Maritime Overseas Corp.,* 519 F.2d 969 (2d Cir. 1975).

### Appointment or Front Pay

■ After Appellant's success before the jury on her ADEA legal claim, she applied to the district court for equitable relief as authorized by § 7(b) of that statute, 29 U.S.C. § 626(b). The courts have been charged by that section to be mindful of the statutory intent of "... recreating the circumstances that would have existed but for the illegal discrimination." *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093 (8th Cir.1982). On such a petition, the district court is to be mindful of the admonition of *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), and its numerous progeny, that equitable relief is to "... be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination

throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 421, 95 S.Ct. at 2373. Accordingly, a district court must carefully articulate its rationale for refusing to compel employment of a plaintiff who has suffered discrimination.

■ The basis upon which reinstatements, or an appointment in this case, may be denied must be more compelling than the personal preferences and distrusts which accompanied the initial discriminatory activity. "It is not enough that reinstatement might have 'disturbing consequences,' that it might revive old antagonisms, or that it could 'breed difficult working conditions' [because] [r]elief is not restricted to that which will be pleasing and free of irritation." *In re Lewis v. Sears, Roebuck & Co.,* 845 F.2d 624, 630 (6th Cir.1988). The district court, on such petition, is of course bound by the jury's decision of the issue of prior discrimination.

■ Such exceptional circumstances as would justify denial of Appellant's petition should be found only upon the facts presently obtaining and not based upon historical circumstances which may no longer be present when the proposed reinstatement occurs. *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276 (8th Cir.1983). For that reason, an evidentiary hearing as to the present circumstances of the parties is appropriate where, as here, the passage of time since trial has been substantial. In this case, the ADEA trial was completed on December 13, 1985, and the district court decided the petition for appointment on October 13, 1987. Moreover, where a petition is denied on the basis of workplace tensions, those tensions must be so serious as to manifest themselves in the public function of the employer. *Id.*

Here the district court offered the following rationale for denial of appointment, approximately two years after the close of evidence:

"... the evidence ... clearly established that there has been an atmosphere of distrust, suspicion and hostility existing in the relationship between the plaintiff

and the administrators ... such that the granting of plaintiff's motion ... would have a negative effect upon the operation of that office and would be inappropriate."

The court has failed to provide the "carefully articulate(d) ... rationale" required by *Dickerson, supra,* and the reasons given are unsupported by such meagre material evidence as the record contains, despite Appellant's two requests for an evidentiary hearing on appointment. The trial record does not support a finding that distrust and hostility were established, and the "administrators" are not named. The position of Director had been filled for yet a second time during the pendency of Appellant's case (and without her being granted an interview). Not only had Superintendent Young resigned, but so had his successor, Cheyney, by the time of the ruling. The determination against appointment must be reversed and remanded for proceedings consonant herewith.

*Front Pay*

■ Appellant's request for front pay as an alternative to appointment, either until she could be appointed to the next available administrative position to become vacant, or to the next vacancy in the Director of Instruction position, was held to be inappropriate and speculative, "... particularly in light of the lack of evidence that any central office contract to which plaintiff might have been a party would have been for any period in excess of a year." The court further found that the jury's damage award had sufficed to make plaintiff whole, although it remitted that award by half. The basis of the denial is not further explained, although front pay is a remedy presumed appropriate unless record evidence clearly demonstrates the contrary. *Davis v. Combustion Engineering,* 742 F.2d 916 (6th Cir.1984). This determination must also be reversed for reconsideration, as an alternative to appointment.

*Title VII Claim re 1978 Appointment*

■ It must be stated at the outset, with regard to Title VII, that the district court correctly determined that Appellant had failed to prove her claim of systemic sex discrimination, there having been no evidence of the size of the pool of eligible female candidates for the positions sought.

■ Appellant, whose qualifications are described *supra,* began submitting annual written requests for promotion to the Massillon system administration in 1973. Notices were not posted of the several vacancies which occurred through 1976, and they were filled by the Superintendent's suggestion that the person whom he desired, always male, submit an application. In 1977, Appellant learned that Superintendent Young planned to interview Robert Otte, a 30–year–old male teacher, for appointment to an unposted vacancy as Interim Principal of Lincoln Elementary (which included the additional duties of Director of Title I and of ABE). Appellant then applied and was also interviewed by Superintendent and Director of Instruction Cheyney. By a later agreement, Appellant accepted the position of Interim Director of ABE, and Otte was given the Interim Principalship.

In the summer of 1978 it became clear that the former Lincoln Principal would not return to duty, and that a permanent replacement must be made.

The parties stipulated at trial that the Board's minimum qualifications applicable in 1978 for the Lincoln Principalship (*et al.*) position were stated at § 2.370 of the Board Policy Handbook as revised in 1977. The Handbook announced a minimum requirement of ten years of prior teaching experience, and no requirement of seniority within the system, whatsoever. Appellant was fully qualified.

Mr. Otte had a total of eight years of teaching experience, all in the sixth grade within the Massillon system. He also possessed the one year of administrative experience obtained through his interim appointment, but had no prior experience in ABE, Title I, or any other federal program. He failed to meet the minimum qualifications of the Board Handbook.

On May 23, 1978, the administration posted a notice of the vacancy in the Lin-

coln Principalship, including a set of minimum qualifications which differed from the Board Handbook in requiring only four years of teaching experience. This was the first vacancy posted since 1972.

Superintendent Young later said that he had chosen Otte for the combined position because, although he found both candidates relatively equal in qualification, Otte had greater seniority in the system. The trial court, on bench trial of the Title VII claims, also found that both candidates met the minimum qualifications (those posted in May of 1978), and that Appellee's explanation concerning Otte's greater system seniority rebutted any presumption of discrimination. The court later found the record "devoid of evidence" in support of Appellant's claim of sex discrimination in the 1978 promotion.

Pursuant to Fed.R.Civ.P. 52(a), a district court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See also, Anderson v. Bessemer City,* 470 U.S. 564, 566, 105 S.Ct. 1504, 1508, 84 L.Ed.2d 518 (1985); *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1015 (6th Cir.1987). "Although the meaning of the phrase 'clearly erroneous' is not immediately apparent ... [a] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511, *citing, U.S. v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ In a Title VII action, plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. The defendant must then come forward with a legitimate non-discriminatory reason for its action, after which the plaintiff bears the burden of proving that the proffered reason is pretextual. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Gagne v.*

*Northwestern Nat'l Ins. Co.,* 881 F.2d 309 (6th Cir.1989).

The district court in this case has clearly erred in its finding that Appellant failed to prove that the reasons proffered for selecting Otte over her were pretextual. Those reasons were that the parties both met minimum qualifications and that Otte was more highly qualified because of his seniority.

On the stipulated evidence, Otte lacked the minimal qualifications for the position (for lack of ten years of teaching), and was only rendered qualified by the reduced qualifications posted by the administration when the vacancy was announced. This was done knowing that Otte and Appellant were the candidates, and after Otte had already been chosen interim incumbent. Moreover, system seniority was not a qualification announced either by the Board Handbook or the administration's posting. It was, however, the only possible measure, however irrelevant, by which Otte might outdistance Appellant, and was cited by the Superintendent after the fact when his decision was challenged. The reasons offered are transparently pretextual, and appear to have been tailored to the needs of the occasion. Neither Appellee nor the district court has presented any examination of the validity of those putative criteria upon which the decision allegedly was made, and no rational basis presents itself from the record. They cannot, on their face, be called legitimate non-discriminatory reasons for an otherwise discriminatory decision.

It appears, therefore, that clear error has occurred, and the decision against Appellant's Title VII claim concerning the 1978 promotion must be reversed.

*Title VII Claim re 1980 Appointment*

■ In 1980, appellant sought a promotion to the position of Director of Instruction when Director Cheyney became Superintendent. She was again denied appointment in favor of a young man, James Gides. According to the Board and Superintendent Cheyney, Gides was selected "because of subjective reasons" and because

he "met the minimum established qualifications." The district court accepted these reasons as legitimate and non-discriminatory and determined that Appellant had failed to make out a prima facie case of sex discrimination with regard to the Director's position. Because the district court's findings of fact were clearly erroneous, we reverse and remand with instructions that such relief as appropriate under Title VII which has not otherwise been awarded, be awarded.

The Board's written policy regarding the Director's position undisputedly required that the appointee possess a minimum of five years of teaching experience and two years of administrative experience. Appellant easily met those requirements, and Gides did not. Gides had only three years of teaching experience prior to his appointment as an Assistant Principal at Lorin Andrews Junior High School in 1974.

Appellee successfully argued below that, even though Gides may not have met the stated requirements for the position, he was nevertheless more qualified than Appellant. The reasoning was that Superintendent Cheyney had felt that Gides' administrative experience (which had been gained because of his rapid advancement under Young and Cheyney) more than compensated for his lack of teaching experience and that there was a "chemistry" between himself and Gides which would be beneficial to their working relationship. The Board voted to hire Gides on the recommendation of Superintendent Cheyney. Furthermore, Board members Thomas Caples and Janice Crofut testified that neither they nor any other member of the Board were aware of the requirements for the Director's position nor did they consciously decide to ignore them. They simply accepted the Superintendent's recommendation.

■ The district court's finding that Gides met the minimum stated requirements for the position, and that the Board had waived its standing qualifications was clearly erroneous. Appellant established a prima facie case which the Board could not rebut with a legitimate non-discriminatory reason for its decision. The use of subjec-

tive criteria is permissible in the selection of management positions. However, "[t]he ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Grano v. Department of Development of the City of Columbus,* 699 F.2d 836, 837 (6th Cir.1983), citing, *Ramirez v. Hofheinz,* 619 F.2d 442, 446 (5th Cir.1980). In the instant case, two primary factors convince us that the alleged use of subjective criteria was merely a poor disguise for discriminatory action by the Board.

First, as has already been shown, Gides failed to meet the minimum stated qualifications for the position. The subjective criteria were not utilized to distinguish among peers, but to favor an unqualified person, discriminatorily.

Secondly, although Appellant's evidence was insufficient to prove systemic sex discrimination, certainly part of Gides' favorable "chemistry" was the fact that no female administrator had ever been appointed in the Massillon system. Implicit in Gides' selection by the Superintendent was the unacceptable preference for maintaining the continuity of an all-male administration. No other non-discriminatory explanation of the subjective reasons or desired chemistry was offered, and no closer scrutiny given by the court below.

The decision of Appellant's Title VII claim on the 1980 promotion fails to meet this court's standards requiring close analysis of subjective criteria as enunciated in *Shacke v. Southworth,* 521 F.2d 51, 55–56 (6th Cir.1975); *Tye v. Board of Education, Polaris District,* 811 F.2d 315 (6th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987); *Senter v. General Motors Corp.,* 532 F.2d 511, 528–29 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). The decision of this claim is reversed.

*Claims Under 42 U.S.C. § 1983*

■ Appellant's section 1983 claims were dismissed by the trial court as having been filed outside of the applicable statute of limitations. This is a matter of law subject to *de novo* review by this court.

**1400**

*Taylor and Gaskin, Inc. v. Chris–Craft Industries,* 732 F.2d 1273, 1277 (6th Cir. 1984).

 Appellee concedes that the Supreme Court's recent decision in *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), should be applied retroactively. Therefore, the general Ohio statute of limitations for actions for bodily injuries, rather than the intentional tort statute, is to be applied. Ohio Revised Code § 2305.10 accordingly allows two years from accrual for filing of a claim under 42 U.S.C. § 1983, thus Appellant's 1980 claim for the position of Director of Instruction was timely filed. Her 1978 principalship claim, however, having been filed in April, 1982, is barred by the applicable statute of limitations. The only question then left for our consideration is whether, as the Board also argues, Appellant is now collaterally estopped from bringing the 1980 § 1983 claim by the district court's interim bench trial and determination of her Title VII claim on the same facts.

In essence, the Board's argument is that even if the section 1983 claim was timely filed, its dismissal by the district court is harmless error because Appellant is now precluded by the improper dismissal from bringing the claim by the doctrine of collateral estoppel.[1] The Board contends that the issues involved in Appellant's section 1983 claim were addressed and resolved during the Title VII action tried to the court, and that therefore Appellant is now bound by the district court's findings in that action. Those findings, of course, have now been reversed.

 The Board's argument raises the question of whether the district court's erroneous findings in the Title VII action can preclude Appellant from a subsequent jury trial on her section 1983 claim. It is beyond purview that a judge hearing a Title VII claim based upon the same operative facts as previously tried by a jury in an identical section 1983 action would be bound by the jury's determination of liability. *Gutzwiller v. Fenik,* 860 F.2d 1317 (6th Cir.1988). Although the situation here is reversed, the Board nevertheless contends that the outcome should be the same. Acceptance of this proposition, however, would result in an abrogation of Appellant's Seventh Amendment right to a jury trial on her legal claim.

Until recently, there had been differing views among the federal circuits as to the effect of collateral estoppel in this situation. *See e.g., Ritter v. Mount. St. Mary's College,* 814 F.2d 986 (4th Cir.1987), *cert. denied,* 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987) (holding that legal claims could be collaterally estopped even though the trial court's findings in the equitable action were erroneous and remanded) and *Volk v. Coler,* 845 F.2d 1422 (7th Cir.1988) (holding that plaintiff was not bound by trial court's erroneous findings on her equitable claims).

The Board urges us to adopt the reasoning of the Fourth Circuit in *Ritter* and apply collateral estoppel to Appellant's section 1983 claim whereas Appellant argues that the Seventh Circuit's decision in *Volk* should be our guide. The Supreme Court's recent decision, however, in *Lytle v. Household Manufacturing, Inc.,* —— U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) is dispositive of this issue.

The factual situation in *Lytle* is similar to that presented in this case. The trial court erroneously dismissed the plaintiff's legal claims prior to trial and then denied her Title VII claims in a bench trial. On appeal, the Fourth Circuit reversed the dismissal of the legal claims but held that plaintiff was estopped from retrying them and was bound by the trial court's factual determinations. In reversing the Fourth Circuit and remanding for further proceedings, the Supreme Court said that "[o]ur conclusion is consistent with this court's

---

**1.** "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), *citing, Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

approach in cases involving a wrongful denial of a petitioner's right to a jury trial on legal issues. In such cases, we have never accorded collateral-estoppel effect to the trial court's factual determinations. Instead, we have reversed and remanded each case in its entirety for a trial before a jury. *See Meeker v. Ambassador Oil Corp.,* 375 U.S. 160 [84 S.Ct. 273, 11 L.Ed.2d 261] (1963)." *Id.* at ——, 110 S.Ct. at 1337. No less is required here.

The court went on to say further that "[w]e decline to extend *Parklane Hosiery Co., supra,* and to accord collateral-estoppel effect to a district court's determinations of issues common to equitable and legal claims where the court resolved the equitable claims first solely because it erroneously dismissed the legal claims. To hold otherwise would seriously undermine a plaintiff's right to a jury trial under the Seventh Amendment." *Id.* at ——, 110 S.Ct. at 1338. We further note that the error committed here was not harmless, as Appellee argues, because this court has now reversed the findings and conclusions of the trial court against Appellant on her Title VII claim.

For these reasons, we hold that Appellant is not barred from trying her section 1983 claim to a jury. That claim is therefore remanded for trial.

*Prejudgment Interest on Verdict*

■ Pursuant to Fed.R.Civ.P. 54(c), prejudgment interest will be allowed as part of the final judgment where a request for same is made in the complaint. *Shearson/American Express, Inc. v. Mann,* 814 F.2d 301, 307 (6th Cir.1987). Such awarding of prejudgment interest "on backpay awards [has] become reasonably common." *EEOC v. Wooster Brush Co.,* 727 F.2d 566, 578 (6th Cir.1984).

The jury returned a verdict in favor of Appellant on December 13, 1985, and it was reduced to judgment on the same day. The bench trial regarding the Title VII claim was then held at the end of that month. On January 10, 1986, ten days after the conclusion of the Title VII trial, Appellant filed several motions seeking further relief, among them a motion for prejudgment interest. In denying the requests, the trial court stated that:

> [because it had] been filed more than ten (10) days after the entry of judgment in the ADEA action, (it) is barred by Rule 59(e) of the Fed.R.Civ.P. and is therefore denied. *Goodman v. Hueblein,* 682 F.2d 44 (2nd Cir.1982).

The trial court's finding that the request was untimely is erroneous. The request for prejudgment interest was made in the complaint in accordance with *Mann, supra.* Moreover, it appears that the judgment on the ADEA claim was not contemplated by the parties or the court to be the final judgment. In its September 8, 1986 opinion, the district court noted that both the court and counsel had agreed that a single judgment covering both the ADEA and Title VII claims would be issued when both had been decided. Appellant was entitled to rely upon that agreement and understanding. Moreover, the request had been made in the complaint, as required.

Appellant's claim for prejudgment interest is remanded for recalculation after entry of final judgment on all claims of this case.

*Attorney Fees*

■ Appellant complains that the district court abused its discretion by reducing her requested attorney's fees. The district court correctly noted, however, that "[t]here are repeated instances in the time summaries in which the entire amount of time expended is attributed to each or at least several of the categories of claims." The allocation of the full two hours of the initial consultation to each of the three categories to which Appellant has apportioned her time is but one example of several repetitive billings.

Based on these facts and our reversal on the other issues in this matter, we order that the issue of attorney's fees be remanded to the district court for recalculation.

Finally, it was brought to our attention during oral argument that Appellant had filed an emergency petition for interim at-

torney's fees, on the basis of counsel's extreme personal hardship, which the district court has yet to set for a hearing. In light of this successful appeal, the petition shall be amended accordingly, and on remand the district court shall entertain and decide the petition for interim fees forthwith.

This matter is, for the reasons discussed above, REVERSED and REMANDED for further proceedings.