37 F.3d 1499
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Wanda D. SMITH, Plaintiff-Appellant,
v.
CITY OF DAYTON, Defendant-Appellee.
 No. 93-3639.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1994.
 
 Before: CONTIE, GUY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Wanda D. Smith, a white female, appeals from the judgment for the defendant, the City of Dayton, following a bench trial before a magistrate judge of Smith's Title VII suit. She alleged racial discrimination in failing to promote her, sexual discrimination in failing to promote her, and retaliation against her for filing a complaint with state and federal civil rights commissions. Smith argues that the decision by the magistrate judge was against the manifest weight of the evidence and seeks a remand for a hearing on damages. For the reasons discussed herein, we affirm the judgment of the magistrate judge.
 
 
 2
 * and
 
 
 3
 James Newby, a white male, took over as chief of the Dayton police department in late 1987, replacing Chief Broomfield, a black male, who had been brought in as chief from outside the department. Broomfield's status as an "outsider" had caused some resentment in the department for his not having risen through the ranks. Subsequent racial trouble led to Broomfield's resignation in December 1987, which resignation was apparently expected, inasmuch as Newby had been informed in October 1987 that he would be promoted to chief. Smith's lawsuit is based on several appointments that Newby made as chief.
 
 
 4
 The Lowe Appointment.
 
 
 5
 Once appointed, Newby created a new position--the superintendent of administration--at the rank of major, to be added to the existing command structure of chief, deputy chief, three majors, 18 lieutenants, and over fifty sergeants. The appointment of majors is the chief's prerogative. Prior to his appointment, in an effort to garner support among the officers, Newby met with lieutenants Virgil McDaniel, Gerald Morgan, Vickie Hensley, James Finnigan, and Dan Baker, to announce his own impending appointment as chief; the appointment of McDaniel, a white male, as deputy chief; and the promotion of Ron Lowe, a black male, to the position of superintendent of administration. Newby also met with the city manager regarding the promotion of Lowe. At the time, the three pre-existing positions of major were held by Phyllis McDonald, a white female; Edward Long, a black male; and Ronald Labatsky, a white male.
 
 
 6
 Newby appointed Lowe because he had experience as an aide under Major McDonald, because he was well-known in the community, and because he got along well with co-workers and management. In addition, Newby stated that race was a "plus" in the appointment. He also testified that he considered only Lowe, and did not consider Smith or anyone else for the position. McDaniel's promotion to deputy chief was postponed because of (in Smith's words) "highly critical public opinion"--black leaders in the community objected to the lack of black representation in the command structure. Thus, Newby held off on the initial McDaniel appointment.
 
 
 7
 The McDaniel Appointment.
 
 
 8
 Shortly after Lowe's December 9, 1987, promotion to major, Major McDonald resigned. Lowe was transferred to McDonald's position, and Newby promoted McDaniel, on December 22, 1987, to the position of major, because he was well-known in the community and because he had excellent leadership skills, including service as a district commander and as president of the state Fraternal Order of Police. The union Supervisor's Committee supported McDaniel's appointment, and Smith, who was present at the meeting (although, she says, not a member of the committee at that time), voiced no objection to his appointment.
 
 
 9
 At the time of the promotions of Lowe and McDaniel, there were no job descriptions for their positions. The position of major was an "unclassified" position, in contrast to the classified positions of sergeant and lieutenant that required civil-service testing. Newby stressed community involvement as a qualification for the position of major, and expressed concern about having divisive persons in the position. Qualifications for the position of superintendent of administration, adopted in December 1988, require a bachelor's degree and 3 years of police department management experience or 10 years of police experience, three of which must have been in a supervisory capacity.
 
 
 10
 Smith claims that she was denied the promotion that Lowe received because of racial discrimination. She alleges that she was denied the promotion that McDaniel received because of sexual discrimination.
 
 
 11
 The 1990 Appointments.
 
 
 12
 In June 1990, Chief Newby posted a notice inviting applications for four positions at the rank of major. Smith was one of the forty or fifty applicants, and she was interviewed. After interviewing all the applicants, Newby chose John Thomas, a white male; Gerald Morgan, a white male; Jaruth Durham-Jefferson, a black female; and Dallas Hill, a black male.
 
 
 13
 Smith asserts that she was denied the July 1990 promotion in retaliation for filing complaints in January 1988 with the Ohio Civil Rights Commission and with the federal Equal Employment Opportunity Commission. Those complaints were based on the December 1987 promotions. In January 1988, Smith met with McDaniel, at the request of a mutual friend. Smith says that at that meeting, McDaniel told her that it was not in her best interest or in the interest of her career to pursue her complaint against the city. McDaniel says that he merely advised her that she needed to be more people-oriented in the department and that she did not need to be negative about everything. In addition, between the January 1988 complaints and the July 1990 promotions, Smith was given several opportunities to advance her career, such as being selected in 1989 for a training program in San Francisco and being assigned in June 1990 as commander of the Second District, experience that she lacked.
 
 
 14
 Key to Smith's argument that she was discriminated against is her claim that she was objectively more qualified than the individuals who were promoted. There appears to be no dispute that Smith in fact is qualified for the position of major. She has been on the force since 1976, has held various supervisory posts, has a degree in law enforcement plus other academic credentials, has been active on various committees in the Fraternal Order of Police, and has participated in several community activities.
 
 B
 
 15
 Smith's case was tried before a magistrate judge. The magistrate judge noted in his decision that Newby and Smith obviously disagreed as to the necessary requirements for promotion to major. The magistrate judge recognized that not all promotions must reflect a steady progression through the ranks, that formal education or certain supervisory skills are not necessarily required, and that Newby placed great emphasis on community involvement, relative to street supervisory experience. The magistrate judge concluded that "race was the principal reason why Ronald Lowe was chosen over everyone else except his fellow black sergeants." The magistrate judge found that Lowe and Smith were not "nearly equally qualified" for the rank of major in terms of objective qualification standards. The City's affirmative action promotion plan, upon which Newby had partially relied in deciding to appoint Lowe, provides that race may be taken into account only when the candidates are "nearly equally qualified."
 
 
 16
 The magistrate judge concluded, however, that Newby would not have chosen Smith even if race had not been a factor in Lowe's promotion. Because of the other officers in the applicant pool, "Smith was not a clear first choice if racial preference were eliminated." Further, the magistrate judge allowed for wide latitude in the use of subjective criteria in filling the position of major.
 
 
 17
 As to McDaniel's promotion, the magistrate judge found that Smith had made out a prima facie case of sexual discrimination, but that the City had rebutted it with nonpretextual reasons (principally, McDaniel's greater leadership experience). Finally, as to the 1990 retaliation claim, the magistrate judge found that Smith did not make out a prima facie case because there was no causal connection between the filing of her complaint with the Ohio Civil Rights Commission and the failure to promote her in July 1990.
 
 II
 
 18
 The factual findings of the magistrate judge are reviewed for clear error, and due regard is given to the opportunity of the trial judge to weigh the credibility of the witnesses. Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1398 (6th Cir.1990) (quoting Fed.R.Civ.P. 52(a)), cert. denied, 498 U.S. 1082, 111 S.Ct. 952 (1991). Smith argues that the judgment below is against the manifest weight of the evidence. On review, we do not weigh the evidence, evaluate the credibility of witnesses, or substitute our judgment for that of the trier of fact. Rather, we view the evidence in a light most favorable to the City and give the City the benefit of all reasonable inferences. Agristor Leasing v. A.O. Smith Harvestore Prods., Inc., 869 F.2d 264, 268 (6th Cir.1989); Conklin v. Lovely, 834 F.2d 543, 547 (6th Cir.1987).
 
 
 19
 * Title VII prohibits discrimination in employment on the basis of, among other things, race and sex. 42 U.S.C. Sec. 2000e-2(a)(1). In a Title VII case, the plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. Ang v. Procter & Gamble Co., 932 F.2d 540, 548 (6th Cir.1991). To establish a prima facie case under Title VII in the context of a failure to promote, the plaintiff must prove (1) that she belongs to a protected group; (2) that she was qualified for and applied for a promotion; (3) that she was considered for and denied the promotion; and (4) that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied. Brown v. Tennessee, 693 F.2d 600, 603 (6th Cir.1982). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its action. Simpson v. Diversitech General, Inc., 945 F.2d 156, 158 (6th Cir.1991), cert. dismissed, 112 S.Ct. 1072 (1992). The employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Brown, 693 F.2d at 605 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095 (1981)).
 
 
 20
 If the employer meets that burden, the plaintiff must then prove that the employer's proffered reason for denial of promotion was merely pretextual. See Simpson, 945 F.2d at 158-59. The plaintiff must show that race or sex was a "but for" cause of the adverse employment action. Goostree v. Tennessee, 796 F.2d 854, 861, 863 (6th Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1374 (1987). In addition, when a Title VII plaintiff proves that race or sex played a motivating part in an employment decision (i.e., a mixed-motives case), the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's race or sex into account. Simpson, 945 F.2d at 159 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795 (1989)).[1]
 
 
 21
 We have indicated that in employment discrimination cases in which the plaintiff is not a member of a minority or other group historically granted protection under anti-discrimination laws, a prima facie case is established upon a showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," and upon a showing that "the employer treated differently employees who were similarly situated but not members of the protected group." Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985) (quoting Parker v. Baltimore & O. R.R. Co., 652 F.2d 1012, 1017 (D.C.Cir.1981)). Such cases "require application of a McDonnell Douglas standard modified to reflect [the historical] context [of Title VII] as well as the factual situation of the claim." Ibid. In assessing an employer's situation in determining whether the plaintiff has shown the additional elements of a prima facie case, relevant facts may include whether the employer has been under external or internal pressure--for example, from affirmative action goals--to hire more minorities. Such actions are of course not illegitimate in themselves, but they may well indicate that the employer's situation is different from the "background circumstances" existing at the time of Parker. Thus, employment actions affecting a member of the "majority" that may not have created a prima facie Title VII case under Parker might, depending on the circumstances with which the employer is presented, create such a case today. In any event, because "Title VII ... prohibits racial discrimination against all groups," a Title VII plaintiff of any race or sex bears the ultimate burden of proving that invidious discrimination has occurred. Murray, 770 F.2d at 67.
 
 
 22
 The use of subjective criteria is permissible in the selection of employees in management positions. Farber, 917 F.2d at 1399. An employer has "discretion to choose among candidates with different but equally desirable qualifications." Canham v. Oberlin College, 666 F.2d 1057, 1061 (6th Cir.1981), cert. denied, 456 U.S. 977, 102 S.Ct. 2242 (1982). However, the ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action. Farber, 917 F.2d at 1399 (quoting Grano v. Department of Dev. of the City of Columbus, 699 F.2d 836, 837 (6th Cir.1983)). We closely analyze the use of subjective criteria. Ibid.
 
 
 23
 Here, the magistrate judge found that Newby had used race--usually an impermissible criterion--in selecting Lowe for the position of major. That finding is not clearly erroneous, and indeed, the City's brief, and Newby's testimony, concede that race was a "plus" factor. However, the magistrate judge also found that there were other criteria used in selecting Lowe--primarily his community involvement. This finding, too, is not clearly erroneous. It is based on the testimony of Newby and is also supported by Lowe's testimony. Therefore, this case, with respect to the race claim, is a mixed-motives case. As noted above, the City can avoid a finding of liability only by proving by a preponderance of the evidence that the same decision would have been made even if race had not been taken into account.
 
 
 24
 Newby testified that Smith had a divisive influence in the department and that she lacked the community involvement that Newby desired. Newby's and Lowe's testimony indicates that Lowe had the requisite community involvement. It was not unlawful for Newby to rely on such subjective criteria as community involvement and potential for divisiveness. Indeed, in putting together his management team, Newby enjoyed a fair amount of latitude, subject to the court's scrutiny for racial bias. The evidence, viewed favorably to the City, supports the magistrate judge's conclusion that even if race had not been considered in Newby's decision, Smith would not have been promoted over Lowe or the other potential candidates for promotion to major. In sum, the City offered evidence that a rational trier of fact could believe showed that Newby's failure to promote Smith was not due to any discriminatory animus.
 
 
 25
 That conclusion is further buttressed by the magistrate judge's findings with respect to the July 1990 promotions. The magistrate judge found that the selection of Smith to attend the training program and her assignment to the Second District command show that her failure to be promoted then was not because of retaliation, but because others were deemed to be more qualified. These findings are not clearly erroneous.
 
 
 26
 We hold that the magistrate judge did not err in ruling for the City on Smith's claim of racial discrimination.
 
 B
 
 27
 The familiar prima facie elements are required for Title VII sex discrimination claims as well. Scales v. J.C. Bradford & Co., 925 F.2d 901, 907 (6th Cir.1991). Smith appears to have made out a prima facie case here, and the magistrate judge found that she had: she was in a protected group, she was denied the promotion, and someone outside the protected class was promoted. However, the City articulated a legitimate, non-discriminatory reason for the failure to promote Smith: McDaniel was more qualified because of his leadership experience (most notably as a district commander and state FOP president) and because of his community involvement. Smith lacked those credentials, and was found to be divisive. The magistrate judge's findings are not clearly erroneous.
 
 
 28
 Smith offers very little in the way of rebutting the City's legitimate, non-discriminatory reason. She asserts that McDaniel was appointed only because Newby had been unable to promote him to deputy chief as he had originally planned. This reason does not show "but for" causation of sex discrimination.
 
 
 29
 Therefore, the magistrate judge's ruling for the City on Smith's sexual discrimination claim was not erroneous.
 
 C
 
 30
 Title VII also prohibits discrimination in employment against someone who has engaged in activity protected under Title VII. 42 U.S.C. Sec. 2000e-3(a). To establish a claim of retaliation in violation of Title VII, the plaintiff must prove (1) that she engaged in an activity protected by Title VII; (2) that this exercise of her protected civil rights was known to the defendant; (3) that the defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.) (per curiam), cert. denied, 498 U.S. 984, 111 S.Ct. 516 (1990). If the plaintiff establishes her prima facie case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. Ibid. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973)). The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate that the proffered reason was not the true reason for the employment decision. Ibid. (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981)). The plaintiff must establish that the decision complained about as retaliatory would not have been made "but for" the protected status of the plaintiff. Id. at 1068.
 
 
 31
 There is no dispute that Smith satisfies the first three elements of the prima facie case of retaliation: she engaged in protected activity when she filed her complaint with the OCRC and EEOC, Newby knew about it, and she was not promoted in July 1990. The magistrate judge's conclusions as to those first three elements are not clearly erroneous.
 
 
 32
 Smith, however, cannot satisfy the fourth element, the requirement of causation. A causal connection requires the plaintiff to proffer evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982)). The magistrate judge's finding that she did not proffer such evidence is not erroneous. Smith claims that McDaniel told her in a January 1988 meeting that it would not be in her best interest to pursue her discrimination complaint because it would show that she was not part of the management team. McDaniel's description of the conversation, however, did not include any such comment. Further, the magistrate judge found that Smith was given career-enhancing opportunities in the time between the filing of her complaint and the July 1990 promotions. For example, she was selected for the training program in San Francisco and she was given a district command assignment, experience that she lacked. The magistrate judge credited Newby's testimony as to the career-enhancing purpose of the transfer. See Johnson v. United States Dept. of Health & Human Servs., --- F.3d ----, ---- (6th Cir.1994) (not clear error for district court to credit supervisor's testimony that denial of promotion not due to filing of civil rights complaints).
 
 
 33
 Also, as we have noted, evidence that the employer treated the plaintiff differently than identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir.1987); Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir.1987). No evidence was presented to show that Smith was treated differently than the other unsuccessful applicants or the successful applicants (i.e., except for not being promoted). Further, she exercised her protected rights in January 1988 and November 1989, well before the adverse action occurred. See Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir.1986) (discharge four months after filing of complaint insufficient to support inference of retaliation). Thus, the element of causation is lacking here.
 
 
 34
 Even if Smith were able to make out a prima facie case, the City has articulated a legitimate, non-retaliatory reason for not promoting her: Newby thought the others who were promoted were more qualified. Smith's formal educational qualifications exceed some of theirs, but each had significant community involvement and many years on the force. Given the magistrate judge's crediting of these facts, Smith is unable to show that the same failure to promote her would not have occurred "but for" the alleged retaliation.
 
 
 35
 The magistrate judge did not err in ruling for the City on Smith's retaliation claim.
 
 III
 
 36
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Civil Rights Act of 1991 changes that rule, see 42 U.S.C. Sec. 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that race [or] sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice"), but the Act is not applied retroactively to the events here. Vogel v. City of Cincinnati, 959 F.2d 594, 598 (6th Cir.), cert. denied, 113 S.Ct. 86 (1992)