Arthur W. ANDERSON, and Jerry Hollingsworth, Plaintiffs,

v.

CONWOOD COMPANY, et al., Defendants.

No. 94–2967 D/A.

United States District Court, W.D. Tennessee, Western Division.

Jan. 29, 1999.

Warner Hodges, III, Hodges Law Firm, Germantown, TN, R. Sadler Bailey, Jr., Bailey & Clarke, Memphis, TN, for Arthur W. Anderson, Jerry Hollingsworth.

Jerry Hollingsworth, Memphis, TN, pro se.

Robert M. Faragarson, Neely, Green, Fargarson & Brooke, Memphis, TN, for Edwin S. Roberson.

Richard Glassman, Tim Edwards, Glassman Jeter Edwards & Wade, P.C., Memphis, TN, Lloyd N. Shields, Shields Mott Lund,

LLP, New Orleans, LA, for H. Stephen Brown.

Leo Maurice Bearman, Jr., Baker Donelson Bearman & Caldwell, Memphis, TN, Timothy A. Ryan, III, Lucas Thompson Ryan & Sossaman, Memphis, TN, for Conwood Company.

Lloyd N. Shields, Shields Mott Lund, LLP, New Orleans, LA, for David J. Cocke.

David D. O'Donnell, Hickman Sumners Goza & Gore, Oxford, MS, Shelby Duke Goza, Hickman Sumners Goza & Gore, Oxford, MS, S. Duke Goza, Hickman Goza & Gore, Oxford, MS, for James W. Rayner.

## ORDER GRANTING DEFENDANT'S MOTION FOR REMITTITUR, DENYING DEFENDANT'S MOTION FOR A NEW TRIAL, DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

DONALD, District Judge.

Before the Court is a motion by defendant Conwood for (1) judgment as a matter of law, or, in the alternative, (2) judgment for a new trial and/or remittitur of damages from the Verdict of the Jury, and Judgment of the Court, based upon a violation of the Fair Credit Reporting Act. For the following reasons, the defendant's motion for remittitur of damages is granted. The defendant's motion for a new trial, or, alternatively, judgment as a matter of law, is denied.

### Background Facts

Plaintiffs filed suit against the defendants for violations of 15 U.S.C. § 1681 et seq., commonly known as the Fair Credit Reporting Act (FCRA). The plaintiffs asserted that their consumer credit reports were improperly acquired by defendant Conwood, on May 25, 1994. The credit reports, provided by Equifax, were to be used by the defendants in civil litigation against the plaintiffs. Equifax's contractual agreement prohibited its subscribers from accessing the consumer credit information if the intended use was for employment or judicial/litigation purposes. Additionally, plaintiffs averred that the sub-

sequent sharing, dissemination, and usage of their credit reports by the defendants violated provisions within 15 U.S.C. § 1681 et seq.

Plaintiffs sought damages on the basis of pecuniary loss, emotional distress, and other related claims. After an August, 1998, trial on the merits, in which the plaintiffs presented minimal evidence of damages and made no precise demand in the presence of the jury, the jury awarded each plaintiff compensatory damages in the amount of $2,000,000. The jury also awarded the plaintiffs punitive damages in the amount of $3,500,000.

### Standard of Review

■ Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages awards have been awarded. *Honda Motor Co. v. Oberg,* 512 U.S. 415, 421, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994). Punitive damages are not compensation for injury. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979).[1] Instead, they are private fines levied by civil juries to punish reprehensible conduct, and deter its future occurrence. *Id.*

■ Case law, from the United States Supreme Court, recognizes that "the Constitution imposes a substantive limit on the size of punitive damages awards." *Honda Motor Co.,* 512 U.S. at 420, 114 S.Ct. at 2335. Although the cases fail to draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable, "a majority of the Justices agree that the Due Process Clause imposes a limit on punitive damages awards." *Id.* The Supreme Court has repeatedly expressed its concern about punitive damages that "run wild". *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991).

■ The Sixth Circuit's general rule, governing the remission of compensatory damages, is that the jury's verdict should not be reduced "unless it is beyond the maximum damages that the jury reasonably could find

---

1. See also *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); and W. Prosser, *Law of Torts,* § 2, pp. 9–11 (4th ed.1971).

to be compensatory for a party's loss." *Jackson v. City of Cookeville,* 31 F.3d 1354, 1359 (6th Cir.1994) (jury award of front and back pay in an age discrimination case after the plaintiff was forced to retire); quoting *Farber v. Massillon Bd. of Educ.,* 917 F.2d 1391, 1395 (6th Cir.1990). The *Farber* Court held that a trial court is within its discretion in remitting a verdict only when, "after reviewing all evidence in the light most favorable to the awardee," it is convinced that the verdict is clearly excessive, or the result of bias, prejudice or passion. *Id.* A trial court has the authority to reduce a verdict that is so excessive or inadequate, it shocks the judicial conscience of the court. *Id.* In appropriate cases, reductions in awards may well be justified even when the amount in controversy does not necessarily "shock the conscience," but rather leaves us with "the definite and firm conviction that a mistake has been committed," resulting in a plain injustice. *Darby v. Heather Ridge,* 827 F.Supp. 1296, 1299 (E.D.Mich.1993); quoting *Neyer v. United States,* 845 F.2d 641, 645 (6th Cir.1988).

■ If there is any credible evidence to support a verdict, it should not be set aside. *Farber,* 917 F.2d at 1395; citing *Werthan Bag Co. v. Agnew,* 202 F.2d 119 (6th Cir. 1953). The trial court may not substitute its judgment, or credibility determinations, for those of the jury. *Farber,* 917 F.2d at 1395. A trial court abuses its discretion in granting a remittitur, or a new trial, when the amount of the verdict turns upon conflicting evidence or the credibility of witnesses. *Farber,* 917 F.2d at 1395; citing *Hewitt v. B.F. Goodrich,* 732 F.2d 1554 (11th Cir.1984); *Cross v. Thompson,* 298 F.2d 186 (6th Cir.1962); *Duncan v. Duncan,* 377 F.2d 49 (6th Cir. 1967), cert. denied, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967).

■ When a defect in a jury's award is readily identified and measured, remittitur is more appropriate than a new trial. *Strickland v. Owens Corning,* 142 F.3d 353, 359 (6th Cir.1998); citing *Kolb v. Goldring, Inc.,* 694 F.2d 869, 875 (1st Cir.1982). District courts should grant a motion for remittitur only if the award clearly exceeds "the amount which, under the evidence in the case

was the maximum that a jury could reasonably find to be compensatory" for the plaintiff's loss. *Bickel v. Korean Air Lines Company, Ltd.,* 96 F.3d 151, 156 (6th Cir.1996); quoting *In re Lewis,* 845 F.2d 624, 635 (6th Cir.1988) (quoting *Manning v. Altec, Inc.,* 488 F.2d 127, 133 (6th Cir.1973)). Unless the award is beyond the range supportable by proof, the court must let the award stand. *Bickel,* 96 F.3d at 156; citing *Leila Hosp. & Health Ctr. v. Xonics Medical Sys.,* 948 F.2d 271, 278 (6th Cir.1991). Although proof of damages cannot be too remote or speculative, where the fact of damages has been established, a lesser quantum of proof is necessary to establish the amount. *Wilson v. The International Brotherhood of Teamsters,* 83 F.3d 747, 756 (6th Cir.1996) (Sixth Circuit affirmation of remittitur based upon the present value of plaintiff's lost pension benefits).

## Legal Analysis

■ Defendant Conwood asserts that the charge to the jury contained (1) no definition of punitive damages and its purpose, (2) no guidance to the jury on how to assess punitive damages, and (3) no statement to the jury that they did not have to assess punitive damages, even with a finding of a willful violation. (Defendant's motion ¶ 7; supplemental memorandum p. 2). Conwood avers that opposing counsel's comments regarding the financial condition of the defendants, and how they spent time "at country clubs," had a prejudicial effect on the jury. (Defendant's motion ¶ 9; supplemental memorandum p. 5). Moreover, counsel for the plaintiffs described himself as a representative of "little people," and commented on how his clients were bearing the heat of the day while defendants spent time at their clubs. (Defendant's memorandum p. 12). Conwood argues that such remarks were intended to prejudice the jury, and draw attention to class distinctions and social positions. (Defendant's memorandum p. 12).

Conwood argues that the verdict of the jury, regarding both compensatory and punitive damages, is so outrageous, enormous and shocking as to indicate passion and prejudice by this sympathetic jury. (Defendant's

motion ¶ 10). Conwood claims that unaccountable caprice was definitely prevalent given the extremely meager evidence of damages proximately caused by the defendants. (Defendant's motion ¶ 10). Conwood contends that the verdict of the jury should be set aside, because it was arbitrary, capricious and the result of passion and/or prejudice.[2] (Defendant's motion ¶ 11). On this point, the Court concurs. Conwood states that the information contained within the credit reports was admittedly public information.[3] (Defendant's motion ¶ 11). Conwood further avers that the plaintiffs' lives did not change as a result of their credit reports being acquired. (Defendant's memorandum p. 9). The record supports this fact.

Conwood claims that its substantial rights are affected by the sizeable punitive damages award, which constitutes a taking of its property without due process of law in violation of State and Federal Constitutions. (Defendant's motion ¶ 23). Conwood argues that the Court retained the right to determine punitive damages, and errored when it submitted the issue to the jury. (Defendant's motion ¶ 21). Conwood, in support of its position, cites 15 U.S.C. § 1681n(a)(2), which calls for the assessment of punitive damages "as the court may allow." [4] (Defendant's motion ¶ 21).

Plaintiffs respond that they prepared a multi-faceted jury verdict form that was rejected by the defendants. (Plaintiffs' response p. 2). Instead, the defendants accepted a more general verdict form found in *Devitt and Blackmar.* (Plaintiffs' response p. 3). Plaintiffs contend that the defendants waived their right to protest any element contained in the plaintiffs' proposed verdict form, and are now estopped from making such objections. (Plaintiffs' response p. 2). Plaintiffs argue that the defendants are also estopped from protesting the jury instructions that addressed the issue of punitive damages.[5] (Plaintiffs' response p. 3). Plaintiffs assert that the parties received a copy of the final instructions before they were read to the jury.[6] (Plaintiffs' response pp. 3–4). Plaintiffs contend that after the Court charged the jury, each counsel was given an opportunity to object to the instructions, but no one did. (Plaintiffs' response p. 4) (*See also* Tr. 30–31). Additionally, plaintiffs aver

---

2. Conwood further supports its claim that the verdict of the jury was based upon passion, prejudice, caprice, and sympathy by citing the *ad damnum* clause in the plaintiffs' amended complaint. (Defendant's motion ¶ 13). Conwood argues that the jury's verdict, which exceeds the *ad damnum* clause, is evidence of the jury's passion and prejudice that requires a remittitur of damages. *Id.*

3. Conwood states that it is uncontroverted proof that everything on the credit reports concerning the financial condition of the plaintiffs was already well known to Roberson, Wilson and Rayner. (Defendant's memorandum p. 7). In May of 1993, one year before the credit reports were accessed, Hollingsworth made a full "dissertation" of his financial problems, including tax liens, bankruptcies and debts, in order to borrow money from Messrs. Wilson and Roberson. *Id.*

4. 15 U.S.C. § 1681n provides:
   Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
   (1) any actual damages sustained by the consumer as a result of the failure;
   (2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

5. Rule 51 of the Federal Rules of Civil Procedure provides (in pertinent part): "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, . . . ."

6. Plaintiffs cite the jury instruction, on page 15, which reads: "The act (FCRA) requires that a Defendant, in order to be liable in damages under the act to a plaintiff, be shown to have committed either a negligent violation of the act or a willful noncompliance of the the [sic] act, knowingly and intentionally, in conscious disregard for the rights of others." (Plaintiffs' response pp. 4–5). The jury instructions, on the same page, further provide: "If you find that any Defendant did not *either* negligence or willfully fail to comply with the act knowingly and intentionally, in conscious disregard of the rights of the Plaintiffs, you should find in favor of that Defendant or Defendants. The burden of proof in proving willful noncompliance of the act, knowingly and intentionally, in consious [sic] disregard of the rights of the Plaintiffs *is upon the Plaintiffs*.["] (Plaintiffs' response p. 5) (emphasis by the plaintiffs).

that the absence of questions or inquiries from the jurors about their instructions indicates that they were not confused.[7] (Plaintiffs' response p. 8).

Regarding the issue of improper remarks by counsel at trial, plaintiffs assert that case law does not support the notion that comments about representing "the little man" is considered error. (Plaintiffs' supplemental response p. 2). Plaintiffs argue that their closing statement regarding defendant Roberson and his "country club" was not objected to at trial, but if the comment had been ruled an error, the effect was harmless at best. (Plaintiffs' supplemental response p. 2).

Finally, plaintiffs argue that if their personal consumer credit reports contained information that was already "public knowledge," the defendants would have had little desire to acquire them. (Plaintiffs supplemental response p. 8). Plaintiffs aver that the defendants had something to gain by reviewing the reports. (Plaintiffs supplemental response p. 8). Moreover, plaintiffs argue that the issue of whether or not the reports contained public knowledge is irrelevant under 15 U.S.C. § 1681 et seq. (Plaintiffs supplemental response p. 8).

### Conclusion

In the instant case, the Court finds that the verdict was clearly excessive. The record is void of any proof of damages beyond plaintiffs' testimony of worry, stress, anxiety, loss of sleep and expense in bringing litigation. Indeed, plaintiffs failed to present any demand for a monetary amount of damages as evidenced by the jury's first question, "what amount of damages did the plaintiffs ask for." Thus, the jury's verdict lacks an evidentiary foundation.

Based upon the lack of evidence showing actual damage to the plaintiffs, the jury's compensatory damage awards must be remitted, as they are clearly excessive. The record is insufficient to sustain the trier of fact's combined $4,000,000 award aimed at remedying the plaintiffs' injuries. When an award clearly exceeds the maximum amount by which the plaintiffs can be compensated, a remittitur by the Court is appropriate. A reasonable jury could not have concluded that such an amount was warranted from the facts submitted at trial, as plaintiffs failed to demonstrate an appreciable injury. The verdict of the jury is, therefore, beyond the range of damages supported by credible evidence, and should be vacated.

Jury foreperson Yetman stated that the jury was unclear about the amount of damages the plaintiffs were seeking to recover. Additionally, defendant Conwood notes that the jury's verdict surpassed the *ad damnum* clause found in the plaintiffs' amended complaint. Moreover, plaintiffs increased their demand for compensatory and punitive damages to $100,000 and $200,000, respectively, on November 22, 1995. These facts substan-

---

7. On January 6, 1999, Yvonne Yetman, the jury foreperson, signed an affidavit which attempts to clarify the events that occurred during jury deliberations. The affidavit, filed with the Court on January 8, 1999, states:
1. "There was no confusion or misunderstanding of the instructions given to us by Judge Bernice Donald as it related to any issue. We knew that we didn't have to return punitive damages, but we felt they were most definitely warranted against both Defendants." (Aff.¶ 9).
2. "Only had one question in which we were unclear on and this had to do with the amount of damages sued for by the Plaintiff's. This was handled in accordance with the instructions provided to us by Judge Bernice Donald (see exhibit A)." (Aff.¶ 10).
3. "As part of the original jury instructions, we were told that punitive damages could be awarded to the Plaintiffs if we so determined that the actions of the Defendants were willful." (Aff.¶ 12).

4. "At no time did we feel that any statements made by any of the attorneys influenced us in any way as far as emotional or passion was concerned." (Aff.¶ 16).
5. "We made our decision and awarded damages jointly and severally solely based upon our collective review of and the assessment of ... the Exhibits, the credibility of facts, sworn testimony of the witnesses, the credibility of each person that testified, our common sense and the review of our individual notes taken in those areas.... as were instructed to do so by the court." (Aff.¶ 17).
6. "We felt like the cumulative amount of *actual* and *punitive* damages awarded to each Plaintiff were justified and warranted based upon our review of the totality of evidence, testimony and the actions of the Defendants and their agents." (Aff.¶ 18).

tiates the Court's finding that the jury's verdict was well beyond what a reasonable jury would have deemed necessary to make the plaintiffs whole.

Even though the record is devoid of real proof regarding plaintiffs' actual losses, the jury, nevertheless, found liability and awarded plaintiffs an enormous sum of money. The inescapable conclusion is that rational thought was vacated by the jury, and replaced with their own passion and prejudices to fill the vacuum.

The Due Process Clause prohibits punitive damage awards from running wild. This Court is vested with the authority to decide whether or not such damages are allowed in a FCRA claim. Notwithstanding the jury's sentiments that punitive damages were justified and warranted in the present case, the Court finds that there was no proof of any action on the part of defendants which warranted the imposition of punitive damages. Therefore, the Court will vacate the award of punitive damages against the defendants.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED,** that plaintiff Anderson's $2,000,000 jury award for compensatory damages is reduced to $50,000, and plaintiff Hollingsworth's $2,000,000 jury award for compensatory damages is reduced to $50,000. This mirrors the complaint demand of $50,000 in actual damages for each plaintiff. (Complaint p. 5). Plaintiffs' $3,500,-000 punitive damage award is vacated, because no evidence exists in the record for a reasonable jury to base a finding of punitive damages. Finally, plaintiffs are hereby awarded reasonable attorneys fees.