Henry Paul JACKSON (93–5233),
Plaintiff–Appellee/Cross–
Appellant,

v.

The CITY OF COOKEVILLE and John
Gentry, City Manager (93–5232; 93–
6306), Defendants–Appellants/Cross–Ap-
pellees.

Nos. 93–5232, 93–5233 and 93–6306.

United States Court of Appeals,
Sixth Circuit.

Argued May 13, 1994.

Decided Aug. 10, 1994.

Charles Hampton White (argued and briefed), Rebecca L. Wells–Demaree, Cornelius & Collins, Nashville, TN, for plaintiff-appellee cross-appellant.

Everett Harry Falk, Cookeville, TN (argued and briefed), for defendants-appellants cross-appellees.

Before: JONES, Circuit Judge; WELLFORD, Senior Circuit Judge; and ENSLEN, District Judge.*

JONES, Circuit Judge, delivered the opinion of the court, in which ENSLEN, District Judge, joined, WELLFORD, Senior Circuit Judge (pp. 1361–63), delivered a separate opinion concurring in part and dissenting in part.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-Appellee Henry Paul Jackson filed this age discrimination claim against the City of Cookeville and its City Manager, alleging that Jackson was forced to retire from his job as assistant police chief due to his age. Jackson won a jury verdict, and the damage award included an amount for back pay (lost past earnings) and an amount for front pay (lost future earnings). The trial judge entered an order reducing the jury verdict by an amount representing Jackson's expected future pension benefits. The judge also decided that the jury had failed to discount the front pay award to its present value, and thus he further reduced the award by doing so. On appeal, the defendants argue that the jury verdict should be vacated and, alternatively, that the district court should have remitted the damages further, by the amount of Jackson's anticipated future earnings. On cross-appeal, the plaintiff challenges both of the reductions in the award that the court made. We affirm the verdict, and order that a portion of the original jury award be reinstated, as the district court abused its discretion in concluding that the jury did not reduce the award to present value.

---

* The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

I

Jackson joined the Cookeville Police Force as a patrol officer in 1960. In 1967, he became a sergeant, in 1969 a lieutenant, and in 1974 a captain. In 1975, he was named Assistant Chief of Police. In 1977, Jackson became the Chief of Police, a post he held until 1985. The Cookeville City Manager at that time, Luther Mathis, felt that morale was low on the force and that Jackson was "doing the best he could do, but I felt that I needed to try somebody else in that position and see if they could improve the situation." J.A. at 209. Mathis demoted Jackson to Assistant Chief, without any decrease in pay or benefits, and hired a new chief. The new chief did not solve the morale problem and was removed in 1988, with Jackson appointed acting Chief of Police. In mid–1989, a new police chief, William Benson, was hired from outside the department, and Jackson returned to the position of Assistant Chief.

On January 5, 1990, the City Manager called Jackson to his office and informed him that the City Council wanted him to retire. Jackson, then 52 years old, said that he was not ready to retire. According to Jackson, Jones did not complain about Jackson's work performance nor give any particular reason for his request that Jackson retire. Jones did ask when Jackson was going to reach the point at which he had served thirty years in the department, which is when a Cookeville officer receives full retirement benefits. Jackson said it would be in a couple of months. After this meeting, Jackson went to the Chief and asked if he knew anything about the retirement request. The Chief replied that he was under the impression Jackson was going to retire.

A few weeks later, Jones asked Jackson if he had set a retirement date yet, stating "council and I want you to take up your annual leave starting March 16th, and be out of here by July 1st." J.A. at 112. Jackson once again stated that he did not want to retire. Nevertheless, on March 16, 1990, Jackson began using the over six months of unused annual leave that he had accumulated. In June of that year, while still on leave, Jackson was hospitalized for observation and tests concerning a possible heart problem.

He changed to sick leave at this point. In July 1990, Jones abolished Jackson's position as Assistant Chief of Police. In that same month, Defendant John Gentry replaced Jones as city manager.

Gentry learned from the city council that Jackson was voluntarily on leave and was going to retire when the leave ran out. On November 12, 1990, Gentry called a meeting with Jackson, Benson, and McCoy Shelton, who was then the Safety Officer for the city, the third highest post in the police department. Gentry told Jackson that he could remain on sick leave, but when the leave ended, he would have three options: to retire, to be demoted to a patrolman's position, or to be terminated. Gentry had no firsthand knowledge of Jackson's performance as an officer at this time.

Jackson remained on sick leave until March 4, 1991. Two days later, Gentry wrote Jackson advising him of the three options. The letter said the demotion to the patrolman position would carry with it a substantial pay cut. Jackson chose to retire, immediately filing a charge of age discrimination with both the Equal Employment Opportunity Commission and its Tennessee counterpart.

The case proceeded to trial in federal district court. Jackson testified that he would have worked until age sixty-five but for the forced retirement, which he alleged was due to his age. Due to his forced retirement, he said he lost his $40,450 salary, a $2,022 scheduled pay increase approved for the 1990–91 fiscal year, future earnings, insurance coverage, and the use of a city automobile.

In charging the jury, the district court stated that if Jackson prevailed on his age discrimination claim, the jury must award him back pay damages "in the amount which would have been paid to him from the time of his dismissal to the present." J.A. at 243. The court also instructed that Jackson was to receive front pay damages or "an award of prospective or expected damages to compensate a plaintiff for the loss of future earnings." Id. at 244. The court instructed that the plaintiff had a duty to mitigate his dam-

ages, meaning the plaintiff must have tried to secure similar employment. The court told the jury that they were to subtract any anticipated earnings from any damage award, and that the burden was on the defendants to establish the amounts of mitigated damages to be subtracted. Also, the court gave explicit instructions on discounting the damage award to reflect the present value of any future earnings to be received.

After deliberating, the jury returned a verdict in Jackson's favor and awarded $63,000 in back pay and $467,192 in front pay damages. The verdict form did not require the jury to break down the award into further components. The court entered judgment on the verdict on July 20, 1992. The defendants filed a motion for a judgment notwithstanding the verdict or a new trial. After a hearing, the district court denied the motion. However, the court decided to make three changes in the verdict. First, the court deducted the $16,000 cost of Jackson's personal automobile from the back pay award of the jury. Second, the court deducted from the front pay award the $16,800 annual pension benefit that Jackson received, reducing the front pay component of the judgment to $282,392 in damages. Third, the court determined that the jury had awarded the front pay without discounting it to its present value. After a further hearing, the court reduced the award by a particular discount rate, obtaining a present value of $206,600 for the front pay portion of the award. The back pay portion with the automobile cost subtracted was $47,000, producing total damages of $253,600.

On January 21, 1993, before the notice of appeal was filed in this case, the plaintiff's attorney made a motion for attorneys' fees in the amount of $23,657.50. On August 9, 1993, the district judge granted the motion, awarding $24,372 in fees. Defendants filed a separate appeal challenging this award.

## II

After the jury rendered its verdict, the defendants filed a motion for judgment

notwithstanding the verdict, which the district court denied. On appeal, we cannot review this claim, for it appears that the defendants did not make a motion for a judgment as a matter of law (formerly directed verdict) at the close of the evidence. "It is well-settled that a court can only consider a motion for a judgment notwithstanding the verdict *only if* the moving party has previously made a motion for a directed verdict at the close of all the evidence." *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir.1990) (citing cases). "Therefore, a party who has failed to move for a directed verdict at the close of all the evidence, can neither ask the district court to rule on the legal sufficiency of the evidence supporting the verdict for his opponent nor raise the question on appeal." *Id.*

Although Federal Rule of Civil Procedure 50 was amended in 1991 to establish "judgment as a matter of law" as a uniform term replacing the use of "j.n.o.v." and "directed verdict," it is clear that this amendment did not change the rule stated in *Portage II*. First, the amending of Rule 50 was not intended to change the substance of the law in this area, but only to change the terminology. *See* Rule 50 (Notes of Advisory Committee on Rules, 1991 Amendment).[1] Secondly, the text of the rule now states that a motion for a judgment as a matter of law must be made before submission of the evidence to the jury. Rule 50(a)(2) reads, in part: "[m]otions for judgment as a matter of law may be made at any time *before submission of the case to the jury.*" (emphasis added). Though the rule then deals with "renewal" of the motion after the entry of judgment, it does not state or imply that a motion for judgment as a matter of law properly can be initiated after the verdict. *See also* 5A Moore's Federal Practice ¶ 50.08 (2d ed.1989) ("a motion for judgment as a matter of law made after the verdict cannot be entertained unless the moving party requested judgment as a matter of law prior to the submission of

---

1. It is for this reason, in fact, that a motion for "judgment notwithstanding the verdict" can be considered at all. Under the amended Rule 50, a motion for "j.n.o.v." is an error that is "merely formal ... [and] should be treated as a motion for judgment as a matter of law in accordance with this rule." Fed.R.Civ.P. 50 (notes of advisory committee on rules, 1991 amendment).

the case to the jury...."). Thus, notwithstanding the 1991 amendments, under *Portage II* a party properly may present a post-verdict motion for judgment as a matter of law only if it was made earlier at the close of the evidence.

The defendants admitted to the district court that they did not seek a directed verdict at the conclusion of the proof, even conceding that "technically we probably should have done that, and I think the better practice would have been to have done that." J.A. at 256. Since the post-verdict motion was not made earlier, the district court should have dismissed it, and we cannot review the matter on appeal.[2]

### III

In this case, Jackson presented the following uncontested evidence relating to damages on a blackboard at trial:

|  | 1991 | 1992 |
|---|---|---|
| Salary | $40,450.00 | $42,472.00 |
| Five-percent raise | 2,022.00 | |
| Car payments | 9,000.00 | 7,000.00 |
| Insurance | 600.00 | 432.00 |
| Pension | −16,800.00 | −16,800.00 |
| Income/other sources | −450.00 | −4,871.00 |
| Total Loss | $34,822.00 | $28,233.00 |

Two-Year Total Loss: $63,055

J.A. at 37.[3]

The parties agree that the jury awarded $63,000 in back pay damages to Jackson, as calculated on the blackboard. To explain the jury's award of $467,192 in front pay damages, the parties agree that the jury simply multiplied Jackson's 1992 salary of $42,472 by eleven—the number of years that Jackson testified he planned to continue to work.

▉▉▉ The court made three post-award decisions with respect to these damages that we must consider.[4] First, the court refused to reduce the front pay award by the amount of Jackson's anticipated future earnings, a decision that the defendants appeal. Second, the court reduced the award by the pension benefits that Jackson would receive during each of the next eleven years. Jackson cross-appeals this decision. Third, the court concluded that the front pay award was excessive because the jury did not discount the earnings to their present value, and the court performed the discounting for the jury. Jackson also challenges this decision.[5]

2. We note that even if we could reach the merits of the motion for judgment as a matter of law, considering the evidence in the light most favorable to Jackson, enough evidence was presented to permit a reasonable jury to find in his favor. *See Fite v. First Tennessee Production Credit Ass'n*, 861 F.2d 884, 889–90 (6th Cir.1988). Furthermore, the jury's damage award in this case was not so excessive that it evidences passion or prejudice on the part of the jury. *See Dunn v. Hovic*, 1 F.3d 1371, 1382–84 (3rd Cir.1993).

3. The total loss for 1992 was mistakenly presented as $28,231 and the total two year loss as $63,053, a two-dollar calculation error.

4. The court made its decisions upon a motion for a new trial. The court heard testimony and denied that motion but nevertheless made a determination that the award was excessive, effectively treating the motion as if it were also a motion for a remittitur of the jury verdict. The court had the power to act as it did, for it has long been held that courts may condition denial of a motion for a new trial upon the plaintiff's acceptance of a remittitur of the jury verdict. *See Dimick v. Schiedt*, 293 U.S. 474, 482, 55 S.Ct. 296, 299, 79 L.Ed. 603 (1934); *Smith v. John Swafford Furniture Co., Inc.*, 614 F.2d 552, 553 (6th Cir.1980). Though the court should have provided Jackson with an opportunity to choose whether to have a new trial instead of accepting the remittitur, the plaintiff has given no indication that he would have preferred a new trial, and so we will not find error on that ground.

5. The court also reduced the jury's back pay award by the $16,000 that Jackson had to spend on a car when he lost his police department car, which had not been provided for his personal use. This decision is not appealed.

■ We have held that as a general rule, a jury verdict should not be remitted by the court "unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir.1990) (quoting *Green v. Francis*, 705 F.2d 846, 850 (6th Cir.1983)), *cert. denied*, 498 U.S. 1082, 111 S.Ct. 952, 112 L.Ed.2d 1041 (1991). In *Farber*, we explained:

> A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court.

*Id.* See also *In re Lewis*, 845 F.2d 624, 635 (6th Cir.1988) ("a motion for remittitur should only be granted if the award *clearly* exceeds the amount which, under the evidence in the case, was the maximum that a jury reasonably could find to be compensatory for the plaintiff's loss.") (quotation omitted). When a district court denies a motion for a remittitur, we will not disturb that decision unless the court has abused its discretion. *Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264, 268 (6th Cir.1989); *see also Joan W. v. City of Chicago*, 771 F.2d 1020, 1023 (7th Cir.1985).

For the following reasons, we hold that the district court did not err in refusing to reduce the amount of Jackson's future earnings by any mitigated amounts, nor did it abuse its discretion by subtracting his pension benefits from his front pay award. The court, however, erred in concluding that the jury did not reduce the front pay award to its present value.

■ **Future Earnings.** After instructing the jury that the plaintiff has the burden of proving the amounts of front pay and back pay, the court stated:

> I instruct you that the plaintiff has a duty to mitigate his damages. By this, I mean the plaintiff must make a good faith attempt to secure employment of the same or a similar nature. You are reminded that the burden is upon the defendant to establish the amounts, if any, which the

plaintiff could earn if he made a reasonable effort.

J.A. at 244. It is a well-established general rule that though a plaintiff has a duty to mitigate damages, a wrongdoer carries the burden of establishing that damages were lessened or might have been lessened by the plaintiff. *See, e.g., Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593–94 (6th Cir. 1986). The defendants have conceded that they offered absolutely no proof of the plaintiff's ability to earn in the future. J.A. at 258–59. Though the defendants are correct that the jury must consider mitigation of damages when such evidence is presented, the jury has no obligation to create such figures out of thin air. This is especially true here, as the evidence showed that Jackson was receiving pension benefits, which implies that he was not working. As the jury reasonably relied on the evidence before it, the court properly refused to reduce the award by some undetermined amount representing mitigation of damages. If the defendants wished the jury to find mitigation, they should have presented the jury with evidence to that effect.

■ **Subtraction of Pension Benefits.** Next we address Jackson's claim that his pension plan payments are payments from a collateral source and should not have been deducted from his front pay award by the district court's remittitur. The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor. *See Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994).

■ Since his retirement, Jackson has been receiving pension benefits from the Tennessee Consolidated Retirement System, which appears to be an entity separate and distinct from his employer, though his employer paid into the system for Jackson's benefit. *See* Tenn.Code Ann. §§ 8–34–101 to 717. The question of whether to deduct such pension benefits presents a problem, in that our treatment of the benefits will undoubtedly permit one of the two parties to receive a

windfall of sorts. Allowing the plaintiff to receive both the pension benefits and his full salary leaves him with more than he would have had if he had been working. Conversely, deducting the pension benefits represents a windfall to the employer, for had the plaintiff continued working the employer would have paid both the plaintiff's salary and an amount into the pension plan. Because the victim rather than the perpetrator of discrimination should profit, courts that have considered this question have held that pension payments from a collateral source are not to be deducted from an Age Discrimination in Employment Act award. *See Doyne v. Union Elec. Co.*, 953 F.2d 447, 451–52 (8th Cir.1992) (citing cases).

In this case, we are unable to apply this general rule, for Jackson's own uncontested evidence presented to the jury, as shown in the chart above, asked that the jury subtract the pension benefits from his salary. The jury used Jackson's figures and subtracted the pension benefits from the back pay award. In awarding front pay, however, the jury simply used Jackson's base salary and failed to make the pension benefit deduction. These two decisions cannot be reconciled in principle: Either the pension benefits are to be deducted or they are not, but they cannot logically be deducted from the back pay yet not from the front pay. Since Jackson himself asked for a damage award that included a deduction of benefits from his back pay, the district court did not abuse its discretion in

making the award rational by subtracting the benefits from the front pay award as well.

■ **Reduction to Present Value.** After explaining that front pay is "an award of prospective or expected damages to compensate a plaintiff for the loss of future earnings," the trial court instructed the jury at length that they must determine and award the present worth of the expected compensation that Jackson would have received. J.A. at 244–46. The present value instruction was complete and clear.[6]

The jury, the parties agree, calculated the front pay award by multiplying Jackson's 1992 salary by eleven, which is the expected number of years that Jackson would work. The district court determined that in making this calculation, the jury did not discount Jackson's future earnings to their present value, as instructed, so the district court proceeded to discount the award on its own. The court abused its discretion in so doing, for the jury reasonably could have found that the front pay it awarded represents the present value of Jackson's expected earnings. This is so because the jury did not add any future pay raises, whether for cost-of-living or for merit, to the expected salary that the plaintiff would receive; it simply assumed that he would earn his precise 1992 salary over the next eleven years. However, it can reasonably be expected that the plaintiff's future earnings would have increased at approximately the pace of interest rates or of inflation, especially since the jury was shown

6. In part, the present value jury instruction went as follows:

[Y]ou must determine the present worth in dollars of such amount, since the award of future damages necessarily requires that the payment be made now for a loss that will not actually be sustained until some future date. Under these circumstances, the result is that plaintiff would in effect be reimbursed in advance of the loss, and will have [t]he use of the money which he would not have received until some future date.

In order to make a reasonable adjustment for the present use, interest free, of money representing a lump-sum payment of anticipated future loss, the law requires that the jury discount, or reduce to its present worth, the amount of the anticipated loss by taking the interest rate or return which the plaintiff could reasonably be expected to receive on an investment on the lump-sum payment, together with

the period of time over which the future loss is reasonably certain to be sustained, and then reduce it, or in effect, deduct from the total amount of anticipated future loss whatever that amount would [ ] reasonably earn or return, if invested at such rate of interest over such future period of time; and include in the verdict an award for only the present worth—the reduced amount—of anticipated future loss.

In this case, the appropriate method of discounting would be to subtract the anticipated compensation of the plaintiff for each of the years from the anticipated earnings he would have received as assistant chief of police in the corresponding years. Next, reduce the difference for each year to its present worth. Next, in order to get the total future loss, add the reduced amounts.

J.A. at 244–46.

that he was approved for a raise between 1991 and 1992.

An economically accurate measure of Jackson's lost future income would include his expected salary over eleven years *including expected pay raises,* with each year's sum discounted to present value through the use of an appropriate discount rate, which represents the value of having the money now rather than later. A reasonable approximation of this figure can be obtained by simply multiplying his present salary by eleven and neither including future pay raises nor applying a discount rate. This approach, in fact, has been much discussed and is known as the "Alaska rule" since it was first applied by that state's Supreme Court. *See Beaulieu v. Elliott,* 434 P.2d 665, 673 (Alaska 1967).[7]

Of course, it matters not whether the jury actually intended its calculation to reflect present value as described; we can never know. Rather, it matters only that the award itself is supportable by a reasonable interpretation of the evidence. We emphasize that we do not adopt the Alaska rule as the one to be uniformly applied in the Sixth Circuit. However, we find that in the instant case the rule resulted in a reasonable damage calculation, and the district court should not have further remitted the award. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 547, 103 S.Ct. 2541, 2555, 76 L.Ed.2d 768 (1983) (refusing to adopt a uniform method of calculating lost future earnings).

Because the jury reasonably may have awarded damages in this manner, the district court abused its discretion in deciding that the jury did not discount the award to present value. Accordingly, the district court's reduction cheats Jackson out of compensation for expected future pay increases. The jury's front pay award stood at $282,392 before the district court performed its present-

value discounting and $206,600 afterward. Based on the above reasoning, we must remand with instructions to reinstate the award at the higher level.

## IV

In Case No. 93-6306, the defendants challenge the award of attorneys' fees assessed against them. Defendants acknowledge that a prevailing plaintiff generally is entitled to attorneys' fees pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216, and that Jackson was a prevailing party at this time. *See Cookeville Br.* at 4. Defendants only ask to have the fee award vacated if the plaintiff loses on appeal to this court. Since we uphold the verdict today, then, the fee award is proper, the plaintiff remains a prevailing party, and the fee award must stand.

## V

We AFFIRM the jury verdict but REMAND the jury award with instructions to reinstate the front pay portion at $282,392, since the jury reasonably could have determined the present value of Jackson's future compensation by basing its front pay award upon Jackson's 1992 salary and excluding cost-of-living or merit-based pay increases. We also AFFIRM the district court's attorneys' fees award.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part.

I concur with the majority decision in all respects except that portion of the decision dealing with "reduction to present value" of "front pay" described as "an award of prospective or expected damages to compensate a plaintiff for the loss of future earnings." I agree that the district court gave "complete and clear" instructions on present value, but I am "left with the definite and firm conviction that a mistake has been made" in the

7. *See generally* Wm. Gary Baker & Michael K. Seck, Determining Economic Loss in Injury and Death Cases 283-94 (2d ed.1993) (discussing Alaska rule). The authors state: "While not technically accurate, the equating of the growth and discount rates, thus making the present value calculation a quick multiplication, does provide the attorney with a good 'ball park' figure which should not be far off what the economist

will conclude." *Id.* at 284. *See also Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 544-45, 103 S.Ct. 2541, 2554-55, 76 L.Ed.2d 768 (1983) (discussing Alaska rule). We note that even using an economist's more complex method of determining present value, great inaccuracies could occur if, for instance, inflation rates or interest rates diverge from what is expected.

calculation of such an award. *United States v. United States Gypsum Co.,* 333 U.S. 364, 375, 68 S.Ct. 525, 532, 92 L.Ed. 746 (1948).

"Front pay is an 'equitable remedy,' and, if determined by the court, is a matter of discretion, and the court's decision will be overturned on appeal only if it constitutes an abuse of discretion." *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1201 (7th Cir. 1989); *see also McNeil v. Economics Lab., Inc.,* 800 F.2d 111, 119 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).[1] The standard for reviewing a front pay award is "whether any reasonable person could [dis]agree with the district court." *United States v. $103,387.27 in U.S. Currency,* 863 F.2d 555, 561 (7th Cir.1988); *see also Hawley v. Dresser Industries,* 958 F.2d 720 (6th Cir.1992). I am persuaded that on this issue, the district court properly exercised its discretion in adjusting the jury award for future pay to reflect present value and that reasonable minds might reasonably come only to that conclusion under all the circumstances. *See Morelock v. NCR Corp.,* 586 F.2d 1096, 1104 (6th Cir.1978); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983). The evidence points so strongly in favor of the defendant on this question that I would affirm the action of the district court in reduction of the verdict award to a reasonable present value.

The only case cited by the majority to justify the front pay without reduction to present value is *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).[2] While that case declined to set a fixed rule as to the rate of discount to take into account the reduction to present worth of future earnings in a Longshoremen's Act case, the Court, in effect, directed that the district court choose by "deliberate choice" *some* discount rate even

after potential inflation and wage increase consideration were taken into account.[3] *Id.* at 553, 103 S.Ct. at 2558. This court, in *Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir.1985), discussed factors to be taken into account in a front pay award, including other available employment opportunities, "work and life expectancy, the *discount tables* to determine the present value of future damages," and other "pertinent" considerations. *Id.* at 1160 (emphasis added).

Jackson had the burden throughout to prove the amount of his damages. There was no proof about his reasonable work life expectancy as a police officer or executive in light of Jackson's admitted health problems. Jackson's brief admits that he had to have heart surgery due to his heart condition at the time of his separation in 1990. He was on sick leave for many months before he retired in March of 1991. Plaintiff's Brief at 11. When asked how long he wished to work, Jackson responded: *"If my health held out, probably til I'm 65."* (emphasis added). I doubt Jackson established an eleven year work life *expectancy* in light of his known health problems, and one would expect police duties to be stressful and difficult in nature. I give Jackson the benefit of serious doubt and speculation to approve eleven year's future benefits. It is certainly equitable and reasonable in this case, however, to require a reduction to present value in view of these circumstances and uncertainties.

Another factor weighs against the approval of the jury award for front pay made in this case. Jackson is required by law to mitigate his damages. He testified that he realized other earnings in 1990 and almost $5,000 in such earnings in 1991. Jackson continued to be employed at the time of trial. This is unquestioned proof that mitigation is applica-

---

1. We stated in *Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 923 (6th Cir.1984), that "an award of front pay must be governed by the sound discretion of the trial court." *Davis* recognized the equitable necessity of reduction of a front pay award to present value.

2. The majority makes reference to a so-called "Alaska rule" (see n. 7), but that rule has never been adopted in Tennessee nor in this circuit, and I would not utilize it to justify a departure from our circuit's discount to present value rule.

3. The Court discussed a "real interest rate" factor and by inference suggested a 1% to 3% rate in that case. It should be remembered that when the Court made its decision in *Pfeifer,* there had been a period of high inflation during the 1970's, particularly the late 1970's and into the early 1980's. The rate of inflation has substantially dropped since that time as has the rate of average annual increase in compensation.

ble. The plaintiff's own claim of net loss of earnings in 1991, at most, reflected in this case a figure of $42,472.00 *less* "income/other sources" of $4871 or $37,601.00.

Not only should the back pay award as a matter of law be reduced to $37,601 to reflect the mitigation by reason of other earnings so that the annual loss of future earnings should have been pegged at $37,601. Multiplying this amount by eleven would produce a gross figure of $413,611 subject to discount to present value.

The reduced award of the district court, I believe, took into account these equitable factors and a necessary reduction to present value. I submit, for the reasons stated, this was a reasonable award to the plaintiff and represented no abuse of discretion. Jackson himself established and conceded the mitigation reduction.

I am not suggesting that the jury may not make a reasonable award in a case of this type for front pay, but the nature of the award is equitable and it should, therefore, be subject to the close supervision of the district court and its sound discretion to see that the award is appropriate, reasonable and not excessive. It is not disputed that the jury ignored the district court's precise and proper instructions to reduce the amount of future earnings to present value, but, rather, simply multiplied Jackson's gross 1992 prospective salary, including a raise, by eleven "the number of years that Jackson testified he planned to continue to work."

In looking at the circumstances here, we observe that Jackson had previously been demoted from Chief of Police due to a perceived low morale situation.[4] He had served as Chief and Assistant Chief of Police and as a police officer. He served at the will and pleasure of the Cookeville City Manager so he had no expectation of assured indefinite future employment as Assistant Chief of Police. We must also look at practicalities in this case—Cookeville, Tennessee, in 1990 had a population of only 22,700 and the likelihood of continued raises to pay a salary that already amounted to almost $2 per capita

would seem speculative at best. City officials had determined that they no longer needed an Assistant Police Chief when they mandatorily retired Jackson (although the jury found that inappropriate age considerations played a part in the latter action). In short, Jackson was a political appointee subject to the vicissitudes of local town politics in order to continue in his position from year to year. It seems unlikely that Jackson, eleven years from now if he were still physically able and was serving as Cookeville's Assistant Police Chief, would be receiving approximately $65,000 annually.[5]

Based on Jackson's status, if he continued police work, as an "at will" employee, his uncertain state of health, his prove ability to earn mitigating income, and doubt and speculation as to the amount of his future salary and the years he might be able to continue to work in a job probably not needed in Cookeville, I would affirm the district court's award to Jackson as equitable, reasonable, and appropriate. I would also affirm the attorney fee award made by the district court.

---

4. Twice Jackson was "demoted" from the position of Chief of Police—one in 1985 and, again, in mid–1989.

5. Applying the same salary increase increment from 1990 to 1991 over the next eleven years would produce a salary exceeding $66,000 in 2006.