NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0365n.06

Nos. 08-2232, 08-2268

**FILED**

**Jun 15, 2010**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HILLSIDE PRODUCTIONS, INC., GARY RONCELLI, and JOSEPH VICARI,

    Plaintiffs-Appellants/Cross-Appellees,

v.

COUNTY OF MACOMB,

    Defendant-Appellee/Cross-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before:     KEITH, CLAY, and GRIFFIN, Circuit Judges.

    **DAMON J. KEITH, Circuit Judge.** Plaintiffs-Appellants Hillside Productions, Inc., Gary Roncelli, and Joseph Vicari ("Plaintiffs") were granted summary judgment on their breach of contract claim against Defendant-Appellee County of Macomb ("the County"). Following a jury trial, Plaintiffs were denied their remaining claims against the County and awarded no damages for their breach of contract claim against the County. The County prevailed on its counterclaims against Plaintiffs. On appeal, Plaintiffs argue that the district court erred by: (1) denying Plaintiffs' motion for judgment as a matter or law, or, in the alternative, for a new trial; (2) concluding that advice of counsel evidence was properly admitted at trial; (3) excluding the expert testimony of Mark Crawford; and (4) rejecting their procedural due process claims against the County. For the reasons set forth below, we **AFFIRM**.[1]

—————————————

    [1]The County's cross-appeal presented alternative claims in the event this Court reversed the district court's findings and ordered a new trial. We dismiss these claims because we affirm the

## I. BACKGROUND

**A.      Facts**

*Sublease*

On May 19, 1999, Plaintiffs and the County entered into a Sublease for Plaintiffs' exclusive use of the Freedom Hill Amphitheater ("Amphitheater") in Macomb County's Freedom Hill County Park ("Park") and shared use of the rest of the Park. On March 21, 2000, Plaintiffs and the County amended the Sublease and extended its term, with a twelve-year extension until 2020 and renewal options until 2040. Plaintiffs constructed underground improvements on the Amphitheater. The County did not reimburse Plaintiffs for the $1.3 million in costs associated with these improvements.

The County suggested that Plaintiffs instead recoup payment for these costs by taking 75% of the annual revenue from parking at all events at the Park with the County receiving the remaining 25%. Plaintiffs also had to guarantee a minimum of $125,000 annually to the County regardless of the actual revenue, in exchange for receiving 75% of the revenue. At the end of 2000, Plaintiffs began making major renovations to the Amphitheater and applied for a Class C liquor license from the City of Sterling Heights, Michigan. From October 24 through November 15, 2000, Sterling Heights sent letters to Macomb County Parks and Recreation Commission ("MCPRC"), demanding that revenues be directed to Sterling Heights to support services in the Park. Plaintiffs assert that the County never provided them with the notices; and as a result, Sterling Heights imposed a Special Approval Land Use requirement and a new building requirement on the Plaintiffs.

---

jury's verdict.

The County generally authorized its Parks Administrator, Anthony Casasanta, to sign Plaintiffs' requests for building permits and other documents for submission to Sterling Heights, including the February 9, 2001 Special Approval Land Use that he signed. After obtaining the Special Approval Land Use, Plaintiffs required a building permit to begin the second phase of the Amphitheater construction project, including constructing a stage that had been torn down during the first phase of the building project. Plaintiffs submitted the building permit request to Casanata for signature, but the County directed him not to sign the document.

Plaintiffs were advised that they would instead need the signature of John Hertel, Chairman of the County Board of Commissioners. Chairman Hertel and Corporation Counsel George Brumbaugh met with Plaintiffs, and James Perna, the then President of the MCPRC. Chairman Hertel advised Plaintiffs that they would have to make concessions to the Sublease in exchange for Hertel's signature on the building permit request. Plaintiffs submitted to this request in what became the Second Amendment to the Sublease, on March 29, 2001. The Second Amendment to the Sublease included cross-indemnification provisions for the parties and required Plaintiffs to pay maintenance, property taxes, and 1% of gross ticket revenues to the County.

*Food and Beverage Agreement*

Plaintiffs eventually entered into a Food and Beverage Agreement with the County for Independence Hall, a banquet facility located in the Park. In October 2000, the County issued a Request for Proposals for Catering Services at the Independence Hall, which stated: "No liquor license is available at the Independence Building. All alcohol consumption is done either by being provided by a host without charge or through use of a temporary permit secured by a non-profit

entity." (Am. Compl. Ex. I, at 2.) Parks Administrator Casanata received a letter from the Sterling Heights Police Department in response to the Request for Proposals, dated October 26, 2000, advising him that Independence Hall must comply with the city's liquor ordinances and providing him with the text of said ordinances.

Plaintiffs bid on the County's Request for Proposals and thereafter executed the Food and Beverage Agreement, a license, with the County on May 10, 2001. The license provided Plaintiffs with access to parts of the building for catering service through 2020, for an annual payment of $40,000. Plaintiffs and Sterling Heights became embroiled in litigation regarding the ordinances that Sterling Heights required of Plaintiffs, which ended after entry of a Consent Judgment in 2004. *See Hillside Productions, Inc. et al. v. Duchane et al.*, Case No. 2:02-cv-73618 (E.D. Mich.).

In January 2005, Plaintiffs sought the County's consent to renovate Independence Hall. Plaintiffs wanted to create office space, a coatroom, and a liquor storage room. The proposed coatroom would have affected the space in the County's meeting room, and resulted in changes to the County's administrative office and storage supply areas. The County responded by stating that the MCPRC would like to meet with Plaintiffs to discuss a possible modification to the Food and Beverage Agreement and the Sublease. Plaintiffs countered that they would not renegotiate either agreement to obtain the approval to renovate.

The MCPRC stated that it would approve Plaintiffs' request only if Plaintiffs agreed to collect parking revenue for all events – the County's obligation under the Second Amendment of the Sublease – at no charge, unless the revenue exceeded $500,000, and at only 25% of the actual labor

costs applied against any amount owed to the County above $125,000. Plaintiffs rejected this proposal.

Over Plaintiffs' opposition, the MCPRC voted on April 11, 2005:

[T]o approve Plaintiffs' request to use the following 439 square floor areas, small office for a catering manager, storage room for the locked liquor and dry goods and conference room area for coatroom all changes for remodeling paid by Hillside Production. In lieu of this space, Plaintiffs will continue to collect parking and cost of labor for parking not to exceed 25 percent and will forward request to Facilities & Operation for recommendation.

(Appellant's App. at 66.) Plaintiffs argue that the designation of square footage for its proposed renovations was contrary to the license, which stated that it was not a lease for specific property. Plaintiffs asked the MCPRC to reconsider its vote. When it would not, Plaintiffs sent the County a notice of termination of the Food and Beverage Agreement on July 5, 2005.

*PSE Transaction*

On October 18, 2005, Plaintiffs approached the County about entering into a purchase asset agreement that would assign its interests in the Sublease to a business formed between Plaintiffs and Palace Sports and Entertainment Hillside, which was named PSE Hillside ("PSE"). PSE agreed to purchase the Sublease from Plaintiffs for nine million dollars. PSE sought written authorization to make improvements to the Amphitheater, to expand parking and raise parking rates without County approval, and to obtain clarification on whether County approval was necessary for advertising. The purchase asset agreement required that certain deliverables be provided in order for the parties to close the agreement.

After the April 11, 2005 MCPRC meeting at which parking collection was discussed, some MCPRC members met with Plaintiffs. According to Riberas, two of the eleven commissioners, Bucci and DiMaria, stated that the County was going to collect and keep all parking revenue related to County-sponsored events. Riberas testified that Bucci and DiMaria informally told him that they knew that the County was not entitled to all the parking revenue for County-sponsored events, but they would vote in this manner to force Plaintiffs to make concessions to the contracts. Bucci and DiMaria later denied making such statements. At the March 23, 2006 MCPRC meeting, DiMaria moved that the County "collect all parking for County-sponsored events and fees," and the motion carried. (3/26/06 Meeting Minutes at 3.) On March 24, 2006, Plaintiffs wrote the County demanding rescission of the vote within four days. On March 28, 2006, the County invited Plaintiffs and PSE to discuss the Sublease at its April 6, 2006 MCPRC meeting. Plaintiffs did not attend the meeting. Plaintiffs instead filed this lawsuit on March 31, 2006.

Plaintiffs sent a letter to PSE stating that they would be unable to close the deal because they could not provide the deliverables, and the County voted to keep the parking revenue on March 31, 2006. PSE represented that it still believed that the purchase asset agreement was viable and expressed a desire to close. PSE has filed an arbitration proceeding, which is pending, requesting that the parties close the purchase asset agreement. As of the date of the filing of Plaintiffs' brief, the PSE transaction had not closed.

**B.      Procedural History**

On March 31, 2006, Plaintiffs filed their complaint against the County in the United States District Court for the Eastern District of Michigan, alleging Equal Protection Clause and substantive

and procedural due process violations, and breach of contract. On May 8, 2006, the County filed its counterclaims against Plaintiffs, alleging breach of contract, fraud, unjust enrichment, and breach of fiduciary duty. On February 7, 2007, Plaintiffs moved for partial summary judgment on their breach of contract claim arising from the County's failure to provide Plaintiffs with certain parking revenues, which was granted by the district court.

On June 14, 2007, the district court granted the County's motion for partial summary judgment, holding that the County was entitled to 25% of parking revenues, 1% of gross ticket sales, maintenance costs, and property taxes. On October 18, 2007, Plaintiffs filed a motion *in limine* for a determination as to whether the County could withhold certain discovery on the basis of attorney-client privilege and still proffer an advice of counsel defense to assert that qualified immunity applies. The district court denied Plaintiffs' motion because the County represented that it did not intend to rely on an advice of counsel defense for any of Plaintiffs' claims; and no official was sued in his or her official capacity, thus qualified immunity was irrelevant to the lawsuit.

The parties filed cross-motions for summary judgment and cross-motions to exclude expert witnesses. The district court granted Plaintiffs' motion for summary judgment on their breach of contract claim as to the parking revenue, and on the fraud, unjust enrichment, and breach of fiduciary duty counterclaims against them. The district court granted the County's motion for summary judgment as to Plaintiffs' procedural due process and equal protection claims. It also granted the County's motion to exclude the testimony of Plaintiffs' expert witness, Mark Crawford, but denied Plaintiffs' motion to exclude the County's expert witness, Larry Chiagouris.

The district court heard argument on the motions *in limine* on April 8, 2008. It granted Plaintiffs' motion to preclude emotional appeals to the jurors as taxpayers and references to the County's financial condition "to the extent that it concerns the argument that the jury should grant no award because Defendant's current or expected financial condition." (April 9, 2008 Dist. Ct. Order at 2.) The district court further granted Plaintiffs' motion to preclude any reference to a multimillion dollar settlement that Plaintiffs had obtained four years earlier in its lawsuit against Sterling Heights "to the extent that it concerns precluding the argument that Plaintiffs should receive no award because of an earlier award in a separate case." (*Id.* at 1-2.)

On April 29, 2008, the district court reversed its ruling on Plaintiffs' motion *in limine* concerning the settlement that they had received four years earlier and permitted the County to argue that plaintiffs should not receive an award because of that settlement. On May 5, 2008, the jury found in favor of the County on Plaintiffs' substantive due process claims and on Plaintiffs' breach of contract claims concerning the Food and Beverage Agreement. Plaintiffs were awarded nothing on their judgment for the County's breach of contract concerning the parking revenue. The jury found in favor of Plaintiffs' on the County's breach of contract counterclaims, except as to the counterclaims concerning gross revenue from ticket sales and the Food and Beverage Agreement. The County was awarded $21,931 on its counterclaim for one percent of the gross revenue from ticket sales and nothing on the Food and Beverage Agreement counterclaims.

The County filed a motion for judgment as a matter of law, and Plaintiffs filed a motion for judgment as a matter of law, or, in the alternative, for a new trial, on June 13, 2008. On August 28,

2008, the district court denied both motions. Plaintiffs filed their timely appeal, and the County filed its cross-appeal thereafter.

## II. ANALYSIS

### A. Plaintiffs' Rule 59(a) Motion for a New Trial

This Court reviews the denial of a party's motion for a new trial brought pursuant to Fed. R. Civ. P. 59 for an abuse of discretion. *See David v. Jellico Community Hospital, Inc.*, 912 F2.d 129, 132-33 (6th Cir. 1990). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *See Mike's Train House, Inc. v. Lionel LLC*, 472 F.3d 398, 405 (6th Cir. 2006) (citations omitted). A court "may grant a new trial under Rule 59 if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Rush v. Illinois Century Railroad Co.*, 399 F.3d 705, 727 (6th Cir. 2005).

Plaintiffs filed a motion for a new trial on June 13, 2008, arguing that the weight of the evidence did not support the jury's findings that: (1) the County was entitled to $21,930 as 1% of gross ticket sales revenue; (2) the County did not violate Plaintiffs' substantive due process rights; (3) Plaintiffs were entitled to no damages for the County's breach of contract concerning the collection of parking revenue; and (4) the County did not breach the Food and Beverage Agreement. Plaintiffs further argued that they were entitled to a new trial as the "jury's verdict was improperly influenced or otherwise unfair" because: (1) advice of counsel evidence was admitted; (2) Fifth Third Bank documents were improperly admitted; and (3) defense counsel acted inappropriately

during trial. Finally, Plaintiffs argue that a new trial was necessary because the award of $21,930 in damages was excessive.

The district court did not consider several claims in Plaintiffs' Rule 59 motion for new trial, finding that there was a "procedural bar" on Plaintiffs' Rule 59 motion because Plaintiffs had not properly brought a Rule 50(a) motion for a new trial prior to filing their Rule 59 motion. However, "motions for directed verdict and judgment n.o.v. are not prerequisites to a motion for a new trial." *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981) (citation omitted). In *Southern Railway Co. v. Miller*, 285 F.2d 202, 206 (6th Cir. 1960), this Court considered a Rule 59 motion, which asserted that the verdict was against the weight of the evidence, in the absence of a Rule 50 motion and set forth a standard of review for Rule 59 motions (abuse of discretion) which is different from that for Rule 50 motions (*de novo* review). In their brief to the district court, Plaintiffs repeatedly argued that a new trial was necessary because the jury verdict was against the "weight of the evidence." (*See* R. 261, Pls.' Mot. for J. at 4, 7, 26, 27, 31-37.)

Despite this, the district court held:

The procedural bar against Plaintiffs' Rule 50 motion extends to preclude any Rule 59 motion raising insufficient evidence for the jury's verdict grounds for relief. *See, e.g. ICP* [sic] *Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 545 n.2 (6th Cir. 1981) ("A motion for judgment [NOV] cannot be entertained unless the moving party has made a timely motion for directed verdict at the close of all evidence."); *Southern Railway Co. v. Miller*, 286 F.2d 202, 206 (6th Cir. 1960) ("No motion for directed verdict having been made, the question of the sufficiency of the evidence to support the jury's verdict is not available as a ground for a motion for a new trial."). Accordingly, Plaintiffs may not seek new trial on the grounds that the jury had insufficient evidence for its verdict (1) awarding $21,930 to Defendant for 1% of gross ticket sales revenue, (2) finding that Defendant did not violate Plaintiffs' substantive due process rights, (3) awarding zero dollars to Plaintiffs for Defendant's

> breach of contract involving parking revenue, and (4) finding that Defendant did not breach the food and beverage agreement.

(August 28, 2008 Dist. Ct. Order at 10.)

The district court misapplied this Court's holdings in *Southern Railway* and *TCP Industries, Inc.* In those cases, this Court distinguished between motions made pursuant to Rule 50, which claim there is *insufficient evidence* to send a case to a jury, and Rule 59 motions, which claim that the jury verdict was against the *weight of the evidence*. The County argues that Plaintiffs' motion was unclear as to whether it was based on the insufficiency of the evidence or the weight of the evidence, and that Plaintiffs invited ambiguity. However, Plaintiffs made repeated reference to the "weight of the evidence," and it was clear that they were not making an insufficiency of the evidence argument.

An abuse of discretion occurs when the district court improperly applies the law, uses an erroneous legal standard, or relies on clearly erroneous factual findings. *See Mike's Train House, Inc.*, 472 F.3d at 405. The district court abused its discretion when it misapplied the law and held that a Rule 50 motion is a prerequisite for a Rule 59 motion that the weight of the evidence does not support the jury's verdict. Nonetheless, Plaintiffs are not entitled to a new trial because their claims are meritless.

1.    *Verdict Against the Weight of the Evidence*

A new trial is appropriate "only when a jury has reached a seriously erroneous result." *Id.* (internal quotations and citations omitted). Plaintiffs first claim that the jury award of $21,931 for Plaintiffs' failure to pay gross ticket sales to the County was excessive and request remittitur or a

new trial.  Remittitur is granted only if the award exceeds the amount that a jury could reasonably find to be compensatory for the claimant's loss.  *See Jackson v. City of Cookville*, 31 F.3d 1354, 1358 (6th Cir. 1994).  The Sublease provides that Hillside "shall pay to the County 1% of all gross revenue derived from ticket sales" and that "gross ticket revenue derived from ticket sales shall be based upon general admission ticket price for each seat."  (Sublease at 3, ¶ 3.)  The testimony of Ticketmaster representative Robert Garsh and Plaintiffs' accountant, Thomas Wickersham, and the Ticketmaster Audit Reports indicate that Plaintiffs gave away a substantial number of complimentary tickets and failed to compensate the County for these tickets.  The Audit Reports indicate that Hillside gave away $2,193,179 in tickets.  The jury awarded the County damages that were 1% of that amount – $21,931.  This sum was not excessive and was reasonable in light of the evidence regarding the gross ticket revenue at issue.

Plaintiffs further argue that the district court abused its discretion when it failed to put aside the jury's verdict against Plaintiffs' on their substantive due process claim concerning the County's vote on the collection of the parking revenue.  A court is not to set aside a verdict simply because it believes that another outcome is more justified.  *See Denhof v. Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (citing *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)).  To show that their substantive due process rights were violated, Plaintiffs must prove that the County acted in a manner that was "arbitrary or capricious," *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003), and that the County acted out of a constitutionally impermissible motive, *Scarborough v. Morgan County Board of Education*, 470 F.3d 250, 261 (6th Cir. 2006).

At trial, there was little evidence of improper motive. Former MCPRC President Perna did not vote in favor of the motion. Eight of the remaining ten commissioners testified that they voted in favor of the motion because they believed that the Sublease was unclear, and that they did not intend to injure Hillside or extract concessions. The primary evidence of improper motive was presented through Riberas's testimony. Riberas claimed that Commissioners Bucci and DiMaria told him that they did not believe that the County was entitled to parking revenue and that they were seeking to extract concessions from Plaintiffs. DiMaria and Bucci both denied making such statements. MCPRC President Perna testified that he spoke to six commissioners, and a "small consensus" of the commissioners believed that the County was entitled to the money. The jury properly made a credibility determination concerning what evidence to rely upon, and a rational fact-finder could find that there was no impermissible motive given these conflicting facts. The district court was not required to ensure that the jury reach the most justifiable outcome – it was to determine whether any rational fact-finder could reach the conclusion that the County did not act out of an impermissible motive. *See Denhof v. Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). The facts here support a conclusion that there was no improper motive.

Plaintiffs next contest the jury's award of no damages on their breach of contract claim with respect to the parking revenue. The district court granted Plaintiffs' motion for summary judgment and held that the County's March 23, 2006 vote to retain parking revenue violated the terms of the Sublease and left the issue of the damages award for the jury. Under Michigan law, the party asserting a breach has the burden of proving damages with reasonable certainty. *See Alan Custom Homes, Inc. v. Krol*, 667 N.W. 2d 379 (Mich. App. 2003). Plaintiffs did not introduce evidence of

lost parking revenue. And, despite the amount of parking revenue collected, the County was entitled to a guaranteed minimum of $125,000 annually. After the 2006 vote, the County never received more than its guaranteed $125,000. Accordingly, the vote did not cause any direct damages to Plaintiffs. As for consequential damages, a PSE representative acknowledged that the parking revenue from County-sponsored events was not a significant part of the transaction with Plaintiffs. This evidence adequately supports the jury's determination that Plaintiffs did not incur damages as a result of the parking vote.

Plaintiffs also contest the jury's finding that the County did not breach the Food and Beverage Agreement by "refusing to allow improvements," and that Plaintiffs did breach the Agreement by failing to make payments on the contract although this breach resulted in no damages to the County. The Agreement provides that Plaintiffs will have access to Independence Hall to conduct events "except for the Park administrative office and storage supply areas." (Agreement at 8.) Plaintiffs sought to make permanent changes to the administrative and storage areas of the Park. Consequently, the County's request for additional consideration to make renovations to these areas was not unreasonable, and a reasonable juror could find that no breach occurred. The Agreement permits unilateral termination only upon breach, and the jury reasonably found that the County did not breach its contract by denying Plaintiffs' request to make permanent changes to the venue. Accordingly, by failing to make payment pursuant to the Agreement upon declaration of the contract's termination, Plaintiffs themselves had breached the contract.

2. *Unfair or Improperly Influenced Verdict*

Plaintiffs next argue that the district court abused its discretion when it held that the jury's verdict was not improperly influenced or otherwise unfair due to the admission of evidence concerning advice of counsel and the Fifth Third Bank documents, and the improper conduct of defense counsel. Evidentiary rulings fall within the broad discretion of the district court, *Conklin v. Lovely*, 834 F.2d 543, 551 (6th Cir. 1987), and a new trial is proper only when an abuse of discretion has an effect on the final result, *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 567 (6th Cir. 1985).

As the district court noted, the challenged evidence[2] – the advice of counsel evidence and the Fifth Third Bank evidence – constituted "a small portion of a nearly month-long trial and did not relate to an actual defense." (August 28, 2008 Dist. Ct. Order at 13.) It held that this evidence did not have a substantial effect on the final result of the trial. The district court denied Plaintiffs' motion *in limine* concerning the advice of counsel evidence, "finding that Defendant would not rely on advice as counsel as an affirmative defense and that the such evidence was therefore not relevant to any fact of consequence in the case." (*Id.*) After trial, the district court held that the County "in fact presented no such defense at trial." (*Id.*) It noted that while "certain witnesses touched upon advice of counsel, it [sic] did so in a tangential way and not with the effect of suggesting to the jury that Defendant simply followed the advice of counsel and should therefore not be held liable." (*Id.*)

---

[2]Plaintiffs also challenge the admission of testimony by two individuals, Brumbaugh and Meyerand. The district court properly held that Plaintiffs waived this issue by failing to provide adequate briefing on it in their motion for judgment as a matter of law. Moreover, as the County notes, "Although plaintiffs' counsel asserted at trial that these witnesses had not been produced for deposition, plaintiffs' counsel subsequently withdrew her objection, stating that counsel 'let him testify and then I can bring in the history of correspondence between us if necessary.'" (Appellee's Br. at 41.) No correspondence was provided, and no curative jury instruction was requested.

With regard to the Fifth Third Bank documents the court noted that Plaintiffs did not object to this evidence at trial, and held that it was not convinced that these documents were "surprise" evidence. With respect to the alleged misconduct of counsel, the district court noted that "Plaintiffs raise isolated moments in a lengthy trial." (*Id.* at 14.)

The district court correctly found that there was no unfair prejudice resulting from the admission of the challenged evidence at trial or the conduct of counsel at trial. Much of the testimony that Plaintiffs describes as "advice of counsel" evidence was elicited by Plaintiffs. There were adequate jury instructions, no advice of counsel defense presented at trial, no timely objections to the admission of the contested evidence, and the contested evidence was merely a small portion of the evidence presented at trial and was not prejudicial. When a new trial is requested on the basis of counsel's conduct, there must be clear prejudice that would justify a new trial. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1939). The alleged misconduct drew no timely objections. The district court instructed the jury not to consider the arguments of counsel as evidence (Jury Instruction 4-5), and courts must presume that juries follow instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Plaintiffs have failed to show that there has been an abuse of discretion that had a substantial effect on the outcome of the trial. *See Conklin*, 834 F.2d at 551.

Moreover, even if the admission of the challenged evidence was an abuse of discretion, it was harmless error. Admission of improper evidence at trial will not warrant a new trial unless a different ruling would have caused a different outcome at trial. *See Morales v. American Honda Motor Co*, 151 F.3d 500, 514 (6th Cir. 1998). The challenged evidence relates to issues that were

merely tangential to the parties claims and did not create the type of prejudice that would affect the outcome of the trial.

Accordingly, the district court's rulings on these issues and the jury's verdict are **AFFIRMED**.

## B.      Plaintiffs' Motion for Judgment As a Matter of Law

The district court denied Plaintiffs' motion for judgment as a matter of law, finding that Plaintiffs failed to bring a Rule 50 motion for judgment as a matter of law before the case was submitted to the jury. We review a district court's denial of a motion for judgment as a matter of law *de novo*. *See Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 788 (6th Cir. 2005). A court may grant a motion for a judgment as a matter of law if "'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . .'" *Mike's Train House*, 472 F.3d 398, 405 (6th Cir. 2006) (quoting Fed. R. Civ. P. 50(a)(1)). Judgment as a matter of law is appropriate when "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Noble v. Brinker International, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

Courts may grant a party's motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law must "be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(1)(2); *see American and Foreign*

*Insurance Co. v. Bolt*, 106 F.3d 155, 160. "A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." *American and Foreign Insurance Co.*, 106 F.3d at160 (quoting Advisory Committee Note, Fed. R. Civ. P. 50 (1991)).

Plaintiffs claim that they were prohibited from elaborating on their Rule 50 motion; however, the record indicates otherwise. At trial before the jury recessed, counsel for Plaintiffs stated, "I'd like to reserve my Rule 50 motion for later so we can keep proceeding on." (5/1/2009 Tr. at 127.) The court indicated that "you've successfully preserved that position." (*Id.*) After the jury recessed, the parties had oral argument on the County's pending Rule 50 motions and several other matters. (*Id.* at 128-205.) During these arguments, although the court noted that Plaintiffs' counsel mentioned that she wanted to elaborate on Plaintiffs' Rule 50 claims, Plaintiffs' counsel never did so.

Counsel discussed Defendant's Rule 50 motions during oral argument. Plaintiffs responded to the County's Rule 50 motions by seeking a jury determination on the issues. The morning following this oral argument, the court announced its decision to reserve the *pending* Rule 50 motions and return to them after the jury deliberated. Plaintiffs did not object to this, and Plaintiffs never made a Rule 50 motion on the record before the jury verdict was rendered. Plaintiffs never provided the factual or legal basis for their entitlement to relief under Rule 50.

Plaintiffs may not now rely upon their general statement that they reserved their right to make a Rule 50 motion. A Rule 50 motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(1)(2). The record is clear that Plaintiffs never made a motion on the record before the verdict was rendered. The arguments were centered

on the County's Rule 50 motions, and Plaintiffs never raised any issues or provided a basis for why they were entitled to relief under Rule 50. In fact, Plaintiffs argued in favor of a jury determination on many of the issues. Their failure to raise their claims was more than a minor technical error – they simply never made the motion. Rule 50 is meant to "narrowly restrict the grounds used to overturn a jury verdict by requiring that parties raises important issues before the case is submitted to the jury." *American and Foreign Insurance Co. v. Bolt*, 106 F.3d 155, 160. Accordingly, the district court properly held that Plaintiffs did not make a Rule 50 motion and its determination on this issue is **AFFIRMED**.

## C.        Exclusion of Plaintiffs' Expert Testimony

When considering the admissibility of proffered expert testimony, trial courts are given "the task of ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). The trial court is afforded "a relatively wide degree of discretion" in determining whether to admit expert testimony. *See United States v. Paris*, 243 F.3d 286, 288 (6th Cir. 2001) (internal citations and quotations omitted). The party proffering the evidence bears the burden of proving its admissibility. *See Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). A "party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592 n.10) .

Plaintiffs' expert, Mark Crawford, is a certified public accountant, and his testimony was intended to establish the damages stemming from the County's alleged breach of contract. The district court excluded the expert testimony and found that "Crawford's report is heavy on argumentative narrative and short on verification for his figures." (February 15, 2008 Dist. Ct. Order at 3.) This finding was not an abuse of discretion given the content of the report.

The district court noted that Mark Crawford's report is nineteen pages long, and six of those pages provide background on the case. The court found that the report tends to repeat the claims in the complaint and does not provide much independent specialized analysis. And, the analysis that it does provide relies on questionable methodology. As the district court noted, the "most glaring example of unsubstantiated conclusion" was Crawford's projection that the projected loss should be based on the total purchase of the transaction "without offsetting the value of the asset that Plaintiffs retained when the transaction fell through." (February 15, 2008 Dist. Ct. Order at 5.) Plaintiffs argue that this methodology was not improper because "there were no willing purchasers after the transaction . . . failed to close." (Appellants' Br. at 68.) However, there is evidence on record that PSE is still willing to enter a contract with Plaintiffs. Furthermore, the expected profits analysis in the report does not have a sufficient basis in the facts or reliable methodology. Crawford projected an over $2 million loss in 2006 although Plaintiffs did not make a profit prior to 2006. When asked about the basis of one of his assumptions at reaching this figure, he stated that he pulled it "right out of my head." (*Id.* at 5.) Given these serious methodological issues in his analysis, the district court did not abuse its wide discretion in excluding Crawford's report.

Moreover, even if the exclusion of Crawford's testimony was erroneous, it was a harmless error. The jury never reached the issue of damages because it rejected Plaintiffs' claims that the County committed a breach of contract. *See Toth v. Grand Trunk Railroad*, 306 F.3d 335, 355 (6th Cir. 2002) (finding the exclusion of damages testimony harmless error where the jury found that the plaintiff failed to prove the claim at issue). For the foregoing reasons, the district court exclusion of Crawford's testimony is **AFFIRMED**.

**D.     Plaintiffs' Procedural Due Process Claims**

Plaintiffs argue that the district court improperly granted summary judgment against them on their procedural due process claims. This Court reviews a district court's grant of summary judgment *de novo*. *See Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006). Summary judgment is only appropriate where there is no genuine issue of material fact. Fed. R. Civ. 56(c). All reasonable inferences are drawn in favor of the non-moving party. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). Plaintiffs must show that they had a constitutionally protected property interest, suffered a deprivation of this protected interest, and that the County did not provide adequate procedural rights prior to the deprivation to prevail on a procedural due process claim. *See Med Corp., Inc. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). Plaintiffs argue that "MCPRC's improper vote to keep all parking revenue from non-Hillside-sponsored events was done without affording plaintiffs proper notice or an opportunity to be heard, and was an act that in and of itself inflicted an immediate injury on plaintiffs." (Appellants' Br. at 65.) The district court rejected this argument and noted that the deprivation would not occur until parking revenue had been collected, divided, and paid; Plaintiffs had the opportunity to challenge the vote before it went into effect; and

the County had proposed a meeting on the issue a few days after Plaintiffs objected to the vote.  The MCPRC vote could have been rescinded after such meeting.

Plaintiffs cite *Nasierowski Brothers Inventory Co. v. Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), to support their claim that they suffered an immediate injury after the Board made its decision to keep all parking revenue.  In *Nasierowski*, the city passed a zoning ordinance, without notice or an opportunity to be heard, that severely limited plaintiff's ability to use his land and resulted in immediate injury.  *Id.*  However, that case is clearly distinguishable from the current matter.  Unlike the plaintiff in that case, who would be "placed in a position where he would be required to expend considerable time, effort, and money to restore the status quo ante," see *id.*, Plaintiffs would have incurred no injury until after the parking revenues were collected.  The MCPRC's decision did not change the nature of the property or the nature of the type of activities that could occur there.  Plaintiffs had ample opportunity to be heard during the County's proposed meeting and were given adequate notice of the County's decision.  There were no genuine issues of material fact concerning the adequacy of procedural due process that the County provided Plaintiffs.

Accordingly, the district court determination on this issue is **AFFIRMED**.

### III.  CONCLUSION

For the foregoing reasons, the district court's rulings and the jury's verdict are **AFFIRMED**.